CASE 52—ACTION BY PAULINA CRAWFORD'S HEIRS V. W. J. THOMAS, TRUSTEE, AND OTHERS TO INVALIDATE PART OF THE WILL OF PAULINA CRAWFORD.—DEC. 9, 1899.

# Crawford's Heirs v. Thomas and Others.

APPEAL FROM SHELBY CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEAL. AFFIRMED ON ORIGINAL AND REVERSED ON CROSS APPEAL.

WILLS—CHANGE OF LAW AFTER PROBATE—CHARITABLE BEQUEST—CERTAINTY OF OBJECTS—COSTS.

Held: 1. The validity of a bequest is to be determined by the statute in force at the death of the testator, and when the will was probated.

2. Under Gen. St., c. 13, section 1, providing that, with certain restrictions, all devises and gifts for the benefit of any of certain objects, including churches, "or for any other charitable or humane purpose," shall be valid, a bequest of a fund to a trustee, to be expended "in securing an evangelist," and "in the advancement of the principles of primitive Christianity as taught by the 'Christian Church," is valid as a charitable bequest to aid in the advancement of the principles of primitive Christianity as taught by the Christian Church, otherwise known as the "Reform Church" or "Church of the Disciples of Christ," as the purposes of the charity and the beneficiaries thereof are pointed out with reasonable certainty.

3. Plaintiffs having failed in an action brought by them, as heirs of testatrix, to invalidate the bequest, it was error to charge the trust fund with the costs of the action.

G. G. GILBERT, ATTORNEY FOR APPELLANTS.

W. S. PRYOR, OF COUNSEL.

## STATEMENT OF CASE.

Paulina Crawford died a resident of Shelby county. Her will was admitted to record at the August term, 1889, of the Shelby county court. An appeal was prosecuted to the Shelby circuit court from this judgment of the county court, and the will was finally established by a judgment of the Shelby circuit court on the 31st day of March, 1892. The testatrix left a large estate of more than $50,000. She never had any chil-

dren; her husband had died many years previously, and her next of kin were the descendants of her brothers and sisters. After making sundry devises, the residuary estate consisting of over $27,000 she undertakes to dispose of by the 12th and 13th clauses of her will.

These clauses are as follows:

Item 12th. "I give and bequeath to W. J. Thomas as trustee, the sum of five thousand dollars; the interest of which sum to be used in securing an evangelist in Shelby county, or any other section of the country said trustee may select. The said sum shall be held by him and his successors in perpetuity. The said W. J. Thomas may select his successor, who must give bonds and security approved, and said successor, or successors must in every instance be members of the Christian Church. And furthermore, the proceeds of said sum, or sums, shall be expended in the advancement of the principles of primitive Christianity as taught by the Christian Church."

Item 13th. "I direct that my executor shall pay over to a trustee whom he may select, the residue of my estate, the interest of said sum to be used in the advancement of the principles of primitive Christianity as taught by the Christian church, subject to the same conditions as are mentioned in Item 12th."

The defendant, Ben. A. Thomas was nominated the executor in the will, and he duly entered and qualified. He paid out all the funds designated in the first twelve clauses of the will, and having some doubts as to the validity of the devise contained in the 13th clause, on account of no trustee being named, and on account of the vagueness of the devise, filed a suit in this circuit court for the purpose of having the court to determine whether or not he could in safety pay over this residuary fund to a trustee, whom he might designate. The record of that suit is made part of the record in this case and is found from pages 37 to 76 inclusive. The executor in this suit asked that two of the heirs at law, J. W. Crawford and W. J. Thomas, might defend for all of the heirs at law, inasmuch as it was alleged that they were quite numerous, and it was impracticable to bring all of them before the court within a reasonable time. The executor also in that suit designated three members of the Christian church, and asked that they be permitted to defend for the said church, and all of its membership. The court appointed the said J. W. Crawford and Oswald Thomas to defend the suit, but did not appoint W. J. Thomas, who was designated as one of the defendants in the petition. An answer and cross-petition was filed by these two heirs, J. W. Crawford and Oswald Thomas in which they undertake to

defend for themselves and the other heirs at law. There was in like manner an answer and cross-petition filed by three members of the church, in which they undertake to defend for themselves and all the other members of the said church. There was no process on the original petition, either actual or constructive, against any of the other heirs. There was no affidavit or allegation as to who these heirs were, or as to how many of them there were. There was no warning order and no publication. Neither was there any actual or constructive service of process upon either of the answers or cross-petition. Some proof was taken, and in this condition the court rendered a judgment, that the devise in clause 13 was not void for uncertainty. This judgment did not indicate any purposes to which the fund should be devoted, but left the entire management of the fund to the trustee, and directed the executor to pay over the residuary fund to W. J. Thomas, who was the trustee, designated by the executor. This trustee duly entered and qualified, and has received from the executor not only the $5,000, named in the 12th clause of the will but more than $22,000 named in the 13th clause of the will. This trustee has never made any settlement of his accounts, and this suit is instituted by most of the heirs at law of the testatrix claiming that the devises in these two clauses of the will are void for uncertainty, and they are asking for a distribution of the fund among themselves, and the other heirs; and if this can not be had, they are asking for an enforcement of the trust, &c.

Now we contend for these propositions.

1. That the former proceedings are not a bar to this suit.

2. Even under the former statutes and decisions, these bequests are void for uncertainty.

3. But the question as to whether these funds shall go to the heirs, or to the charity, is to be determined by the recent statute and not under the old law.

4. Even if the bequests are held good as donations to charity, the plaintiffs as heirs of the donor have a right to institute this suit, and to see that the trust is faithfully executed.

5. The present trustee has been unfaithful, and if the devises are upheld it is the duty of this court to designate the beneficiaries and to execute the trust.

### AUTHORITIES CITED.

Johnson v. Morrison, 5 B. Mon., 106; Singleton v. Singleton, 8 B. Mon., 345; Smith v. Gowdner, &c., 3 Met., 175; Bank v. Cochran, 9 Dana, 395; 6 T. B. Mon., 205; Hays v. Mays, 1 J. J. M., 498; Taylor v. Bate, 4 Dana, 205; Boone v. Helm, 4 Dana,.

404; Thompson v. Peebles, 6 Dana, 391; Lewis v. Outton, 3 B. Mon., 455; Craig v. McBride, 9 B. Mon., 15; Freeman on Judgments, sec 158; Tinsley v. Martin, &c., 80 Kentucky, 467; Perkins v. Fourniquet, 6 How., U. S., 206; Civil Code, sec. 96, subsec. 3; Civil Code, sec. 39; Frazier's Executors v. Page, 5 Ky. Law Rep., 790; Pennoyer v. Neff, 95 U. S., 570, 572; Smith v. Cutchen, 38 Mo., 415; Durance v. Preston, 18 Iowa, 396; Mitchell v. Gray, 18 Ind., 123; Thompson v. Whitman, 18 Wal. U. S., 457; Compton v. Jesup, 68 Fed. Rep., 263; Morgan, &c. v. Halsey, Trustee, &c., 17 Ky. Law Rep., 529; Williams v. Gibbs, &c., 17 How., 229; David v. Froud, 1 Mi. & K., 200; Greig v. Somerville, 1 Russ & M., 338; Gillespie v. Alexander, 3 Russ., 130; Sawyer v. Birchmore, 1 Keen, 391; Shine v. Gough, 1 Ball & B., 436; Finley v. Bank of U. S., 11 Wh., 304; Story's Eq. Pl. sec. 106; Wiswall v. Sampson, 14 How., 52-67; McArter v. Scott, 113 U. S., 340; Davour v. Fanning, 4 John's Ch., 199; Dehart v. Dehart, 2 H. W. Green (N. I.) 471; Hawkins v. Hawkins, 1 Hare, 543-545; Bradwin v. Harper, A. M. B., 374; Harvey v. Harver, 5 Beav., 139; Willats v. Bushby, 5 Beav., 193-200; Powell v. Wright, 7 Beav., 444-450; Hallett v. Hallett, 2 Paige, 15; Hamilton v. Brown; The Mary, 13 U. S., 9, Cranch, 126, 144, (3, 678, 684); Scott v. McNeal, 154 U. S., 34 46, (38, 895, 901); Hilton v. Guyot, 159 U. S., 113, 167 (anle., 145, 151.); Phillips v. Moore, 100 U. S., 208-212, (25, 603, 204); Arnt v. Griggs, 134 U. S., 316, (33, 918); Hardy v. Beaty, 84 Tex., 562, 569; Penoyer v. Neff, 95 U. S., 714; Bardstown & Louisville R. R. Co. v. Metcalf, 4 Met., 205; Freeman on Judgments, sec. 159; Turnham v. Turnham, 3 B. Mon., 582; I. Pomeroy Eq. Juris., sec. 429; Freeman on Judgments, sec 606; Smith's Leading Cases, vol 2, p. 585; Civil Code, sec. 364; 12 Ky. Law Rep., 121; Bedford's, &c. v. Bedford's Admr., 18 Ky. Law Rep., 201; Penick, Rector, &c. v. Thomas' Trustee, 12 Ky. Law Rep., 613; Kinney, &c. v. Kinney's Executor, 9 Ky. Law Rep., 753; Peynodas Devisees v. Penodas Executors, 5 Ky. Law Rep., 753; Leeds v. Shaw's Adm., 6 Ky. Law Rep., 26; Baptist Church v. Presbyterian Church, 18 B. Mon., 639; Hadden, &c. v. Chorne, &c., 8 B. Mon., 78; Moore's Heirs v. Moore's Devices, 4 Dana, 355; Cromie's Heirs v. Louisville Orphans' Home, 3 Bush, 365; Curling's Adm. v. Curling's Heirs, 8 Dana, 38; Attorney General v. Wallace, 7 B. Mon., 611; 2 Perry on rusts, sec 748, n. 1; Baptist Association v. Hart's Executors, 4 Wh. 1, 17 Ky. Law Rep.. 532; Gambell v. Tripp, 75 Md., 252; 32 Am. St. Rep., 388; Johnson v. Johnson, 92 Tenn., 559; Tilden v. Green, Green, 130 N. Y.; Read v. Williams, 125 N. Y., 569; McBrayer,

&c. v. McBrayer's Exrs., 16 L. R., 18; Olliffe v. Wells, 130 Mass., 221; Lewin on Trusts, 3 Ed., 75; Thayer v. Wellington, 9 Allen, 283; Heidenheimer v. Bauman, 84 Tex., 174; Wheeler v. Smith, etc., 9 How., U. S., 55; Fountain v. Revenel, 17 How., U. S., 369; Story's Eq. Juris., secs. 1164 1155 and n.; Grimes v. Hammonds, 35 Ind., 198; Holland v. Peck, 2 Iradell Chan. Rep., 255; Green v. Allen, 5 Hun., 170; Bridges v. Pleasants, 4 Iradell Chan., 26; Colt v. Comstock, 51 Conn., 353; Attorney General v. Soule, 28 Mich., 153; Pritchard v. Thompson, 95 N. Y., 76;; I. Stanton Rev. Stat. chap. 14, sec. 1; Kentucky Statutes, sec. 317; Smith v. Stowell, Ch. Cas., 195; Collinson Case, Hob., 136; See Appendix to 4 Wheaton; Southerland Statutory on Construction, sec 206; Satterlee .v. Matthewson, 27 U. S., 380; Chas. River Br. v. Warrne Br., 36 U. S., 417; Browson v. Kinzie, 42 U. S., 331; Balt. & O. R. R. Co. v. Nesbit, 51 U. S., 401; Wilder v. Lampkin, 4 Ga, 209; Boston v Cummins, 16 Ga., 102; Davis v. Ballard, 1 J. J. M., 563; Bay v. Cage, 36 Barb., 447; L. St. L. & T. R. R. Co. v. Barrett, &c., 13 Ky. Law Rep., p. 57; 23 Am. & Eng. Ency. of Law, p. 298; Carpenter v. Penn., 17 How., U. S., 172; Drehman v. Stifle, 8 Wall., U. S., 595; 2 Perry on Trusts, sec 618, etc.; Baptist Church v. Presbyterian Church, 18 B. Mon., 640; Chambers v. Baptist Education Society, 1 B. Mon., 220; Cromie v. Bull, etc., 5 Ky. Law Rep., 735; Chap. 14, sec. 2 of Rev. Stat.; Kentucky Statutes, sec. 318; Page's Executor v. Holman, 82 Ky., 576; Civil Code, sec. 472; 3 Pomeroy's Eq., sec. 1421. Sec. 4706 of Kentucky Statutes.

L. C. WILLIS AND P. J. FOREE, FOR APPELLEES.

(No briefs for appellee.)

This case was decided December 9, 1899, and not marked to be reported, but has recently been ordered to be reported, and is here inserted. REPORTER.

OPINION OF THE COURT BY JUDGE BURNAM, AFFIRMING ON ORIGINAL AND REVERSING ON CROSS APPEAL.

This is an appeal from a judgment of the Shelby circuit court. The suit was instituted on the 1st day of May, 1896, by a number of the heirs at law of Paulina Crawford, seeking to invalidate the twelfth and thirteenth clauses of her will, upon the grounds that "they are void for uncertainty," and that "there are no persons who can come into court

and say that they are interested in the bequest, and demand the enforcement of the power;" and, in event of their failure to secure this relief, they asked the court to remove the trustee, and to designate the beneficiaries of the fund, and to inaugurate a scheme for carrying the device into effect. The facts, as shown by the pleadings, exhibits, and evidence, are that testatrix died a resident of Shelby county; that her will was admitted to probate at the August term, 1889, of the county court; that an appeal was prosecuted from this judgment to the Shelby circuit court; and that the will was finally established by a judgment of that court, based upon the verdict of a jury, in March, 1892. Subsequently, the executor named therein filed a suit in the Shelby circuit court, in which he alleged that he had paid over all of the special devises recited in the will, and that there remained in his hands, to be disposed of under the residuary clause, $21,867.06; that, by virtue of the power conferred upon him by the will, he selected W. J. Thomas as trustee to take charge of this fund—and asked the court to determine who were the beneficiaries thereof, to construe and guide the trustee and plaintiff in disposing of the fund, and to determine whether or not the devise contained in the thirteenth clause was void for uncertainty. Three representative members of the Christian church, residing in Shelby county, were made parties defendant to this proceeding; and the plaintiff alleged that the heirs at law of testatrix were so numerous as to make it impracticable to bring them all before the court within a reasonable time, and asked the court to designate J. W. Crawford and Oswald Thomas (two of such heirs) to defend for all of them. No process was sued out upon the original petition, but an answer and cross petition were filed by J. W. Crawford and Oswald Thomas, for themselves

and other heirs at law of testatrix, in which they said that the bequest contained in the thirteenth clause of the will of testatrix is void for uncertainty and indefiniteness, and cannot be executed by the executor or by any trustee, and asked the court to so adjudge. This litigation ended on the 1st day of April, 1890, with a judgment in which it was held that the devise contained in the thirteenth clause of the will of testatrix was not void for uncertainty, but was upheld as a charitable bequest to aid in the advancement of the principles of primitive Christianity as taught by the Christian church, otherwise known as the "Reform Church," or "Church of the Disciples of Christ." And it was held that the interest on this fund should be devoted to the advancement of the principles taught by that church, and the details of which were left to the trustee, in the exercise of his own judgment.

The clauses of the will which are assailed in this proceeding are as follows: Item 12: "I give and bequeath to W. J. Thomas, as trustee, the sum of five thousand dollars, the interest of which sum to be used in securing an evangelist in Shelby county, or any other section of the country said trustee may select. The said sum shall be held by him and his successors in perpetuity. The said W. J. Thomas may select his own successor, who must give bonds and security approved, and said successor or successors must in every instance be members of the Christian Church. And furthermore, the proceeds of said sum or sums shall be expended in the advancement of the principles of primitive Christianity as taught by the Christian Church." Item 13: "I direct that my executor shall pay over to a trustee whom he may select the residue of my estate; the interest of said sum to be used in the advancement of the principles of primitive Christianity as taught by the Christian church,

subject to the same conditions as are mentioned in item 12th."

Appellees resist the claims of appellants on their merits, and further plead and rely upon the judgment in the case of Thomas' Adm'r. v. Thomas' Adm'x, 87 Ky., 343 (10 R., 223), (10 S. W., 282), as a bar to this proceeding.

In our opinion, this controversy must be determined by the statute in force at the death of the testatrix, in 1889, and when the will was probated, which is in these words: "Section 1. Be it enacted by the General Assembly of the Commonwealth of Kentucky, that all grants, conveyances, devises, gifts, appointments, and assignments heretofore made, or which shall be hereafter made, in due form of law, of any lands, tenements, rents, annuities, profits, hereditaments, goods, chattels, money, stocks, or choses in action, for the relief or benefit of aged or impotent and poor people, sick and maimed soldiers and mariners, schools of learning, seminaries, colleges, universities, navigation, bridges, ports, havens, causeways, public highways, churches, house of correction, hospitals, asylums, idiots, lunatics, deaf and dumb persons, the blind, or in aid of young tradesmen, orphans, or for the redemption of prisoners or captives, setting out of soldiers, or for any other charitable or humane purpose, shall be valid, except as hereinafter restricted." See General Statutes, p. 242, c. 13. By the act of May 12, 1893, which is section 317 of the Kentucky Statutes, these words were added to the statute: "If the grant, conveyance, devise, gift, appointment, or assignment shall point out, with reasonable certainty, the purpose of the charity and the beneficiaries thereof." It was held in Gass v. Wilhite, 2 Dana, 177, that the statute of 43 Eliz., on charitable uses and bequests, was adopted in this State under the rule which embraced all English

statutes of a general character which existed prior to 4
Jac., I., and that it was in force here when that opinion was
rendered, in 1834. Subsequently the Kentucky Legislature
added to the English statute the words, "or for any chari-
table or humane purpose;" and they also added the second
section, so as to remove all difficulty in carrying out the
charitable intention of the testator. Mr. Dembitz, in his
work on Kentucky Jurisprudence (page 481), in referring
to this second section, says: "It goes far to remove the
objection of uncertainty in bequests to charities."

There have been conflict and confusions in the adjudica-
tions of courts of last resort in construing charitable be-
quests; and, in undertaking to account for this, Mr. Perry,
in his work on Trusts (section 748), says: "The distinctive
principles of equity which courts apply to the enforcement
and regulation of trusts for charitable uses are confined
to those States which have adopted the statute of 43 Eliz-
c. 4, or the principles of the common law in regard to trusts
as they existed prior to the statute. In some States the
statute is expressly repealed, and such repeal has been held
to carry with it all the distinctive doctrines of public chari-
ties as they are held in England. In other States the stat-
ute is said to have been adopted or to be in force. The law
of other States is founded upon what is supposed to
have been the common law of the ordinary jurisdic-
tion and practice of the court of chancery prior to
the statute. It is not very material whether courts of
equity in the several States trace their jurisdiction to the
statute itself as in force in their State, or whether they
exercise the jurisdiction as original, and inherent in courts
of equity by common law, anterior to the statute. Substan-
tially the same principles are applied, and the same results
are reached, in either case. In Maryland neither the stat-

ute nor the principles of the statute have ever had any recognition in their courts. No trust for charity can be established unless the beneficiaries are so certain that they can maintain an action in court in their own names for the benefit of the fund. In Virginia the statute was repealed, and the courts will establish no public trust for a charitable use, except it comes within the strict rules of private trusts. The doctrine of the Maryland and Virginia courts has, in a qualified degree, been followed by the courts of Connecticut, New York, Michigan, Wisconsin, and some other States; but in this State, as said by Mr. Perry, "the courts have carried their equity jurisdiction to the extreme verge of the law, in establishing charities." In the early case of Moore's Heirs v. Moore's Devisees, reported in 4 Dana, 354, the devise was as follows: "In case my son, Thomas, should depart this life before he arrives at age, then the estate devised to him I desire may be converted into a fund for educating some poor orphans of this county [Harrison], to be selected by the county court, who are the guardians of such, and to be to such as are not able to educate themselves, that it may do as much good in that way as it can. I desire the fund shall be taken and loaned out at interest, so as to be rendered a perpetual fund, and the interest only to be applied to their tuition; thereby affording a partial good to as many orphans as the scanty pittance will allow." In that case the "poor orphans" were not named, but the county court was authorized by the will to make the selection. The bequest was held by this court to be valid and enforceable; and, in the opinion rendered in that case, Judge Robertson has given us an exhaustive review of the history of this doctrine under which such bequests were upheld, with repeated illustrations of its application. In the case of At-

torney General v. Wallace's Devisees, 7 B. Mon., 618, the
language of the bequest was as follows: "The remaining
fourth, to such charitable or benevolent institutions as
may appear to be most useful in the dissemination of the
Gospel at home and abroad." This was held sufficiently
certain and specific, the court saying: "The 'Gospel,' ac-
cording to the common and more general acceptation of the
term, is synonymous with 'Christianity,' or the 'Christian
religion;' and the general mode of accomplishing the benev-
olent purpose of testator was through such charitable and
benevolent institutions as may appear most useful and
efficient for effecting the object. The particular mode of
administering the charity, or the selection of the institu-
tions most useful for that purpose, it was the intention of
testator  .  .  .  to leave in the discretion of his trustees.
That this devise, as a devise in charity, is good, and clearly
within St. 43 Eliz. c. 4, of charitable uses [and our own
statute], according to the construction which had been
given to it in England and America, there can, we appre-
hend, be no doubt." In the case of Kinney v. Kinney's
Ex'r, 86 Ky., 611 (9 R., 753), 6 S. W., 593, this court up-
held a bequest in these words: "I do will and bequeath
to the M. E. Church South, to be applied to foreign mis-
sions, all of my property, real and personal, after the pay-
ment of my just debts." This devise was assailed by col-
lateral heirs for uncertainty, but was sustained in these
words: "The objection that the devise is so vague that
the intention of the testator can not be executed is not
well taken. The trustee is named in the will, and the lan-
guage used by the testator indicated definitely the purpose
to which he desired his bounty to be applied. The devise
for charity is within the scope of our statute permitting
such uses." The court further remarked: "It is true that

the doctrine of cy pres, as broadly administered by the English courts, has been rejected in this State, but if it were equally in force here, there would be no need of resort to it in this instance, because the donor has definitely fixed the purpose to which his charity is to be applied; and while this court has seen fit not to aid charities to the extent of making or changing a will, and has refused to go so far as to apply the testator's bounty to an object never contemplated by him, and to which he probably would not have contributed, yet, because they are blessings in which all are more or less interested, they are looked upon with peculiar favor by our courts, and will not be allowed to fail for want of a trustee; and if their object, as intended by the donor, be ascertainable, and consistent with the law and public policy, they will be upheld." In the case of Givens' Adm'r v. Shouse, 5 Ky. Law Rep., 419, the devise was a certain sum to trustees, "to be devoted by them to such benevolent objects and purposes as they may select;" the testator requesting them, "in making the distribution, to give preference to charities, connected with, or under control of, the Christian Brotherhood," which was upheld. In the case of Leeds v. Shaw's Adm'r, 82 Ky., 79 (6 R., 26) the bequest was to the trustees of the Lagrange school district, and to be by them "expended in the education of poor children, and towards the maintenance of a good common school in said district, in such way as the trustees shall think will be best in order to do the most good to the poor children in said district;" and this was upheld as sufficiently definite. In the great case of Cromie's Heirs v. Society, 3 Bush, 365, in an opinion rendered by Judge Robertson, this court said: "While the statute of Elizabeth concerning charities was constructively abolished in Kentucky (1 Rev. St., p. 77), it was, in American phase,

substantially re-enacted. Id., p. 235. And thus, though the ultra judicial cy pres doctrines which royal prerogative attached as excrescences to the statute of Elizabeth, had by its repeal been cut off as tumors, the aim of our own statute for upholding charities is to make such as it enumerates available whenever so defined as to be judicially identified and applied. . . . And by the second section of the act, which provides; 'No charity shall be defeated for want of a trustee or other person in whom the title may vest,' courts of equity may uphold the same by appointing trustees, if there be none, or by taking control of the fund or property, and directing its management, and settling who is the beneficiary thereof. But, with the restrictive interpretation thus indicated, charities, in Kentucky, as well as in England and elsewhere, have long been, and yet are, peculiar favorites of modern jurisprudence. The only object of the repeal of the British statute, in some respects more local and consistent with British policy, was to substitute a system more congenial with our institutions, and, by a legislative indorsement of the doctrine suggested in Moore's Heirs v. Moore's Devisees, supra, to eliminate the cypres doctrine of England. Consequently American charity, properly defined, and judicially upheld and applied, is still a favored nursling of Kentucky."

These adjudications are in substantial accord with the decisions of all the American States in which the statute of 43 Elizabeth has been followed, and also with the views of the leading text writers upon this subject. See Beach, Wills, 136; Story, in appendix to 3 Pet.; and Perry, Trusts, section 687. The last author, after an exhaustive review of all the cases, English and Amerian, on this subject, summarizes the law in these words: "If it is once de-

termined that the donor intended to create a public charity, very different rules from those that are applied in establishing and administering private trusts will be applied, in order to give effect to the intention of the donor and establish the charity. Thus, if in a gift for private benefit the *cestui que trustent* are so uncertain 'that they can not be identified, or can not come into· court and claim the benefit conferred upon them, the gift will fail, and result to the donor, his heirs or legal representatives. But, if a gift is made for a public charitable purpose, it is immaterial that the trustee is uncertain or incapable of taking, or that the objects of the charity are uncertain and indefinite. Indeed, it is said that vagueness is, in some respects, essential to a good gift to a public charity, and that a public charity begins where uncertainty in the recipient begins. So, if a gift for a private purpose tends to create a perpetuity, it will be void; but a gift for a public charity is not void, although in some forms it creates a perpetuity. 'Tis said that courts look with favor upon charitable gifts, and take special care to enforce them, to guard them from assault, and protect them from abuse. And certainly charity in thought, speech and deed, challenges the affection and admiration of mankind. Christianity teaches it as its crowning grace and glory, and an inspired apostle exhausts his powerful eloquence in setting forth its beauty, and the nothingness of all things without it."

When we apply the legal principles illustrated by this long line of authorities to the provisions of testatrix's will which we are called upon to construe in this proceeding, we inevitably conclude that neither of them can be declared ineffectual, as both point out with reasonable cer-

tainty the purposes of the charity and the beneficiaries thereof. Testatrix clearly intended that the accumulations on the funds therein devised should be used to preach the doctrines of the church of which she had been a zealous member during a long lifetime, and which had been so clearly and strikingly enunciated by the leaders of her faith. There is nothing in the language of these clauses of testatrix's will which would authorize the use of the interest on these funds in promoting the cause of general education, or in founding charitable institutions, or in assisting any of the numberless good works which an active Christianity has developed. The dominant and controlling idea in the application of the fund devised is that it should be used in the propagation of primitive Christianity as taught by the Christian Church, to which she belonged. While item 12 limits the use of the fund devised in that clause to the propagation of these doctrines in this country, item 13, having the same object in view, takes in a wider scope, and authorizes the use of the interest on the fund devised in that clause to be devoted to the same purpose wherever it could be most profitably employed. It is also manifest that the testatrix intended that this should be done through the agency of evangelists of the church.

It is unnecessary to discuss the plea of *res judicata* relied on by appellee, and which has been elaborately discussed

Appellee prosecutes a cross appeal from so much of the judgment as required him to pay the costs of the proceeding, and a reasonable fee to appellants' attorney. The evidence in this case shows that a large per cent. of these funds has been heretofore expended by the executor and trustee in defending proceedings instituted by appellants, which had in view the identical object sought in this pro-

ceeding, which was to invalidate these bequests, and have
the funds therein devised appropriated to their own use.
This object is utterly inconsistent with the idea of re-
quiring of the trustee a faithful performance of his duties
under the trust, and of enforcing it for the benefit of the
*cestui que trust*. And, as appellants were unsuccessful
in the real issue and purpose for which the litigation was
instituted, they were liable for the costs of the proceeding,
under the provisions of the Code. To change this rule, and
require appellee to pay the costs and appellants' attorney,
would be to offer a premium for attacks upon these pro-
visions of the will from the same parties; for if they can
recover their attorney's fee and costs in such a proceeding,
under the guise that they are solicitous for the proper ex-
ecution of the trust, there is certainly nothing to deter
them from instituting such proceedings as often as they
please, as they would have nothing to lose thereby. For
the reasons indicated, the judgment is affirmed on orig-
inal, and reversed on cross, appeal, and remanded, with in-
structions to dismiss the petition, with judgment for ap-
pellee's costs.

Dissenting opinion by Judge DuRelle, January 1, 1900.

I concur in the opinion of the court as to the 12th clause
of the will under consideration, which devotes the interest
of the fund to secure an evangelist to advance certain as-
certainable religious principles in a prescribed district, and
also provides for a trustee to select the evangelist. This
seems to be a sufficiently definite charitable purpose to be
carried out under the doctrine in force in this State. If I
could believe that by the 13th clause the testatrix intended
the interest of the other fund to be expended in like man-
ner in securing evangelists for the advancement of those

religious principles, though without restriction as to locality, and could believe also that that intention was, by any fair construction, deducible from the language of the will, I should concur in the opinion throughout.

But I do not believe such an intention can be fairly deduced from the language used, for, in my judgment, the phrase "subject to the same conditions as are mentioned in item 12" refers alone to the bond required to be given by the trustee, and the requirement that the trustee should be a member of the particular denomination named.

I therefore dissent from so much of the opinion as gives validity to the 13th clause.