## Gillespie v. Winston's Trustee, et al.

(Decided June 8, 1916.)

Appeal from Fayette Circuit Court.

1. **Wills—Construction of—Prohibition on Alienation of Estate.**—A testator may by clearly expressed intention prohibit the alienation or encumbrance of devised estate within the limitations of section 2360 of the Kentucky Statutes, but whether there is such a prohi-

bition or not, and the extent of it, must depend on he intention of the testator as expressed in his will, and unless the intention to prohibit is clearly found to exist, the prohibition will not be declared.

2.  Wills—Construction of—Prohibition on Alienation.—Where a testator placed his property in trust for a long period of years and provided in his will that "I do not desire any of my business property sold," the intention of the testator, as gathered from a consideration of the entire will, showed that he did not mean by these words to prohibit the sale of his business property under order of court for reinvestment of the proceeds in other business property when it clearly appeared that such a sale and reinvestment would benefit all the objects of his bounty.

GEORGE C. WEBB for appellant.

SHELBY, NORTHCUTT & SHELBY for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Avery S. Winston died in March, 1908, leaving surviving him his widow, three children and some grandchildren. In his will, which was probated soon after his death, he gave to his wife, Amanda F. Winston, during her natural life, the income that might be realized from his entire estate, obligating her to pay to each of his children an annuity, and after the death of his wife he directed his trustee to continue the annuities. In clause 8 he said:

"I desire and so will that all of my property, real and personal, remain in the hands of my trustee hereafter named and remain subject to the trust herein created until twenty-one years after the death of the last survivor of my children and grandchildren living at the time of my death.

"9. When such actual division does take place, I desire and so will that it shall be divided among the persons who are then my legal heirs and in such proportions as may be prescribed by the statutes of descent then in force in the state of Kentucky.

"10. I do not desire any of my business property sold."

In clause 12 he directed that: "Any money, including life insurance or securities, of which I may be possessed at the time of my death, over and above my debts, be invested by my trustee for the best interest of the estate until favorable opportunity offers for re-invest-

ment in good business property, in which it is my desire that eventually the whole estate shall be invested."

In another clause he appointed the Security Trust & Safety Vault Co., of the city of Lexington, his trustee, to carry out the trust provisions of the will.

In 1915 the trust company entered into a contract with R. L. Gillespie by which it agreed to sell one of the business houses owned by the testator at his death to Gillespie for $22,500.00, and Gillespie obligated himself to take the property at this price provided he could secure a good title. Some time after this, Gillespie, having come to the conclusion that the trust company could not convey a good title, declined to accept a tendered deed, and following this declination the trust company, as well as the widow, the three children of the testator and the grandchildren, brought this suit against Gillespie for the purpose of compelling him to accept the tendered title.

In the petition which was filed under the Act of 1882 put in the Code following section 498 it was alleged that "The building upon said lot is used by the defendant partly as a dry goods store and partly as a residence. It has been standing for some years, and the cost of necessary repairs is now not only very considerable, but is steadily increasing; so that, after the payment of taxes, insurance and repairs, the net income realized therefrom is not more than three per cent. upon the above amount. Besides this, it is a fact that, owing to the general direction in which business in the city of Lexington has drifted for some years, the property is not so located as to afford ground for expecting that there will be any material enhancement in its market value for many years to come, over the said price for which it can be sold under said contract.

"On the other hand, if the trustee be allowed to complete said sale, the purchase money can be securely re-invested in either business or other property, as the court may direct, which will not only yield a much higher rate of net income, but which can also be reasonably expected to advance much more rapidly in value. All the plaintiffs, therefore, unite in the belief, and they so allege, that it will be greatly for the benefit of all parties interested in said property under said trust, not only as respects the income derivable therefrom, but also as respects the ultimate benefit of the trust estate

as a whole, if this court will authorize said sale to be completed and the conveyance of said property to the defendant made upon the terms aforesaid.

"If the testator, by the term 'business property,' meant to include this particular property, which is used by the tenant both for business and residence purposes, the conditions existent at the time of the making of his will have so materially changed as to make no longer applicable the reasons which induced the statement in the tenth clause of his will that he did not desire any of his business property to be sold."

In his answer Gillespie expressed his willingness to take the property if a good title could be conveyed, but averred that the provision made by the testator in clause 10 of his will, reading, "I do not desire any of my business property sold," constituted such a restriction upon the power of the trust company to sell the property as would prevent him from acquiring a good fee simple title.

After the issues had been made up, witnesses who lived in Lexington and were well acquainted with the property in question, as well as with the conditions surrounding it, testified, in substance, that it would be decidedly to the interest of all persons interested in the estate to sell the property at the offered price of $22,500.00, which was considerably more than its market value; that the net income derived, or that could reasonably be derived, from the property would not exceed three per cent. of the proposed purchase price; that the location of the property was such that its rental value was much below the rental value of other desirable business property in the city, and on account of the changes in the center of business, this property, in place of increasing, would decrease in value; that it would be beneficial to all the recipients of the testator's bounty if this property could be sold at the offered price and the proceeds invested in other business property located in more desirable sections of the city, where a larger annual income could be realized and where the prospects for advancement in value in the future would be much greater than the prospects of advancement in the locality where this property was situated. It was further made to appear in the evidence that for reasons personal to himself, Gillespie was willing to pay a much higher price for the property than could be obtained

from anyone else or if the property was offered for sale in the usual manner and on the customary terms of sale.

The lower court decided that the trustee could make a good title and ordered a specific enforcement of the contract, directing that the money realized from the sale should be re-invested in business property in accordance with the requirements of the will. It is from this judgment that Gillespie prosecutes this appeal.

The vital and, indeed, the only controlling question in the case is, does clause ten in the will, providing that, "I do not desire any of my business property sold," impose such restrictions upon the trustee as to prevent a sale of any of this property or the business property left by the testator, under any circumstances or at any time? But, in determining this question, it is important and necessary to consider other clauses in the will for the purpose of arriving at the intention of the testator in thus limiting the sale of any of his business property, because the intention of the testator is entitled to the same weight and consideration in the construction of this clause as in the construction of any other clause. And there should also be applied the rule that the entire will must be looked to for the purpose of arriving at his intention in restricting a sale of his business property.

Turning now to other parts of the will, it will be seen that the testator did not desire a final distribution, nor indeed any distribution, of the corpus of his estate to take place until twenty-one years after the "death of the last survivor of my children and grandchildren living at the time of my death," and that during this period he desired that the property should be controlled by the trustee named in his will. He thus postponed the alienation and distribution of his estate as long as it was possible to do so under the law, with the exception of ten months, as section 2360 of the Kentucky Statutes provides that "The absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of a life or lives in being at the creation of the estate, and twenty-one years and ten months thereafter."

It is also apparent that his dominant intention was to keep the body of his estate continually invested in business property, because in other parts of his will he provided that certain property which the trustee was

authorized to sell and convey should be invested in good business property. It did not, however, seem to him so material, nor did he direct, in what part of the city the business property so purchased should be located; nor do we think he was concerned that it should continue to be invested in the same identical property.

We think it further apparent that as the testator desired that his children and grandchildren should, during the continuance of the trust, have the income from his estate, he also desired that they should derive from it as large an income as it was capable of producing, and further desired that when the final objects of his bounty came into the possession of it they should have as rich an estate as prudent business management during the long period of the trust could secure. It is not to be supposed that so careful a business man as the testator was should intend to put such restrictions in his will as would prevent the trustee from exercising, with the consent of the court, good business judgment in selling the property and re-investing the proceeds in other business property more productive, or that he contemplated or intended that the objects of his bounty should by any construction of his will be limited to a small income when a much greater one could be had by changing the location of his investment, or that they should be prohibited from realizing the largest income that by prudent management the investment might be made capable of yielding.

As a further reason for believing that the testator did not intend to prevent a change in the location of his business property when conditions made such change desirable from a business standpoint, we find that under clause 8 of the will, it is entirely probable that this estate will remain in the hands of the trustee for as much as eighty years, and it is obvious that if there should be no termination of the trust or distribution of the estate until approximately this period of time has elapsed, many and radical changes, brought about by various now unforeseen conditions, might make it exceedingly important to the beneficiaries that from time to time the business property held by the trustee should be sold and the proceeds invested under order of court in other business property, so that the interest of the beneficiaries would not suffer by continuing to

keep the investment in particular pieces of property, located in particular places.

Influenced by these considerations, we are of the opinion that whenever it clearly appears necessary to protect the interest of the beneficiaries that there should be a change of investment from one business property to another business property, the court may, on the application of the trustee and beneficiaries, direct sales and re-investment to be made under what is known as the amendment to section 498. Goff v. Renick, 156 Ky. 588.

In reaching this conclusion we do not, of course, wish to be understood as holding that a testator may not prohibit by a clearly expressed intention the alienation or encumbrance of devised estate for such time as he desires within the limitations of section 2360 of the statutes, or during any less period of time, as it has been frequently ruled that this may be done: Young v. Young, 20 Ky. L. R. 1741; Harkness v. Lisle, 132 Ky. 767; Moore v. Potter-Matlock Trust Co., 167 Ky. 201; Morton v. Morton, 120 Ky. 251; Lee v. Lee, 141 Ky. 62.

But in all cases in which the question arises whether there is such a prohibition or not, as well as the extent of it, the decision must depend on the intention of the testator as expressed in his will, and unless the intention to prohibit is clearly found to exist, the prohibition will not be declared: Farris v. Rogers, 9 Ky. L. R. 912; Warfield v. English, 11 Ky. L. R. 263; Lindemeier v. Lindemeier, 91 Ky. 264; Roederer v. Hess, 112 Ky. 807; McGraw v. Minor, 12 Ky. L. R. 687; Rousseau v. Page, 150 Ky. 812; Luttrell v. Wells, 97 Ky. 84.

In the consideration of the case we have not found it necessary to give any attention to the provision in section 492 of the Civil Code providing that, "No sale shall be ordered if forbidden by the deed, will or contract under which the property is held," because this Code provision is expressly limited to subsections 3, 4 and 5 of section 489 and to section 491, and this proceeding was not brought under either section 489 or 491 but was properly brought under the act of 1882, generally spoken of as an amendment to section 498, that was for convenience inserted in the Code directly following that section; and there is no provision in this amendment to section 498 that forbids the sale of property, although, of course, if the sale was forbidden by

the deed, will or contract, it could not be made under this amendment. But, when it is not clearly forbidden by the deed, will or contract, this amendment furnishes authority for sale and re-investment in cases like the one we have.

The judgment is affirmed.