## Slack v. Downing et al.

(Decided March 25, 1930.)

WOTHINGTON, BROWNING & REED and ERNEST L. ZEIGLER for appellant.

CHARLES L. DALY and THOS. D. SLATTERY for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

On the 30th day of March, 1893, Robert Downing executed in legal form his last will and testament which is in words and figures as follows:

"I, Robert Downing being of sound mind and disposing memory, do make and publish this my last will and testament, to-wit:

"1st. I direct that my just debts, if any, my funeral expenses and expenses of administration be paid.

"2nd. I bequeath my entire personal estate to my daughter Sallie R. Downing absolutely as her separate estate.

"3rd. I devise my entire real estate to my daughter Sallie R. Downing for and during her natural life, as her separate estate, remainder to such children as she may have in fee simple.

"4th. I direct that no portion of said real estate shall ever be sold for reinvestment under the statutory provisions of the State of Kentucky authorizing sale of real estate for reinvestment purposes.

"5th. I request that no inventory, appraisement or settlement of my personal estate be required.

"6th. I appoint my said daughter Sallie R. Downing as executrix of this my last will and testament and request she be permitted to qualify without surety.

"Given under my hand that 30th day of March, 1893.

"Robert Downing.

"Subscribed by the testator in our presence and by us at his request in his presence and in the presence of each other this 30th day of March, 1893.

"Robert A. Cochran.
"A. M. J. Cochran."

He died April 28, 1898. The daughter mentioned in the third paragraph of his will survived him as his sole heir at law. She was sixteen years of age at the time the will was executed, and twenty-one years old at the time her father died. She was unmarried at the time the will was executed, but was married at the time of the death of her father. She married E. C. Slack who is now dead. At the time of the institution of this action, she was in her fifty-first year, and was not, and had not been, the mother of any child, or children.

At the time of his death, Robert Downing was the owner of a large acreage of valuable real estate which is the subject of this controversy. The action was brought under the Declaratory Judgment Act (Civ. Code Prac. secs. 639a-1 to 639a-12), and its purpose was to have the court interpret the will of Robert Downing. It is the contention of appellant that she took a life estate in the real property under the will of her father, and, that upon his death, she took a defeasible fee in the same property by inheritance from her father. It is the contention of appellees that, taking the will as a whole, its clear meaning is that his lands, except the life estate therein, should be held together without power of alienation until the contingency should eventuate upon which the fee remainder turns, and that his lands could not be alienated until final vesting of the fee remainder in the children of his daughter, if there should be any such, or if none, that his lands, for the want of the takers that his will provided, should pass by inheritance to his collateral heirs at law.

The chancellor upheld the contention of the appellees. He was of the opinion that, taking the third paragraph of the will alone under the common-law construction applied in this state generally but, as he thought, not uniformly, the testator failed to dispose of his whole title to his real estate, and that his daughter took not only a life estate under the will but, through the working of the common-law rule as to contingent remainders, she also took by inheritance from her father as sole heir at law, the fee remainder that he created by the will, subject to defeasance, only in the event issue should be born to her. But the chancellor was of the opinion that the fourth clause of the will manifested a contrary intention, and that construing the will as a whole, the testator intended to dispose of his whole estate in the lands, and he thought that the claim of appellant, that she is the owner of the life estate under the will, and that she holds a defeasible fee in remainder in the lands of her father, was wholly at variance with the fourth clause, if not in direct opposition to its only logical meaning.

It is clear under the decisions of this court that Robert Downing, by the provisions of his will, gave to the appellant a life estate in his lands, with the remainder in fee to any children that she might have. As he made no further disposition of his property, the unborn children took a contingent remainder subject to its being defeated if there were no children. Subject to that contingency, the title to the remainder did not pass under

the will from the testator to any one. Upon his death the appellant, being his only heir at law, took a defeasible fee in the remainder subject to be defeated only by her having children. The interest in the lands still vested in the testator at the time of his death, passed, under the laws of descent and distribution, to the appellant, and after his death she was the owner of a life estate under the will, and the owner of a defeasible fee under the laws of descent and distribution.

Coots v. Yewell, 95 Ky. 367, 25 S. W. 597, 26 S. W. 179; Newton v. Baptist Theological Seminary, 115 Ky. 414, 74 S. W. 180, 24 Ky. Law Rep. 2310; Baxter v. Bryan, 123 Ky. 235, 94 S. W. 633, 29 Ky. Law Rep. 658; Owen v. Burks, 151 Ky. 162, 151 S. W. 369; Bourbon Agricultural Bank & Trust Co. v. Miller, 205 Ky. 297, 265 S. W. 790; Walker v. Irvine, 225 Ky. 699, 9 S. W. (2d) 1020.

Whether appellant, under this construction of the will, would be the owner of two estates, that is a life estate under the will of her father, and a defeasible fee in remainder as heir of law of her father, is not material. Her interest is the same whether the two estates merged or whether they remain in her as separate estates.

It seems clear to us that Robert Downing devised a life estate to his daughter, with contingent remainder to her children. There were no children at the death of the testator. Therefore, he died intestate as to the contingent remainder and appellant, as his only heir at law, inherited contingent remainder, as there were no contingent remaindermen in existence to take at the time. Nunnelly's Guardian v. Nunnelly, 180 Ky. 131, 201 S. W. 976; Grubbs v. Grubbs, 190 Ky. 258, 227 S. W. 272; Keeton v. Tipton, 184 Ky. 704, 212 S. W. 909; Goodman v. Carpenter, 189 Ky. 83, 224 S. W. 676; Lindenberger v. Cornell, 190 Ky. 844, 229 S. W. 54.

The chancellor was of the opinion that the provision in the fourth clause of the will against sale for reinvestment had the effect of postponing the vesting of contingent remainder until the death of the life tenant. We cannot follow the reasoning of the chancellor on this point, and the able brief filed in behalf of appellees does not undertake to show by any authority that the protective limitation, which is a restraint on alienation for the purpose of reinvestment, affected the vesting of contingent remainder. It is apparent that the testator had in mind section 489 of the Civil Code of Practice when he wrote the fourth clause in his will. That section allows the sale of real estate of an infant by order of a court of

equity for four separate purposes. One is to pay the debts of the ancestor, another is to pay the debts of the infant, another is for the maintenance and education of the infant, and another is for reinvestment. There is no restriction in the will against a sale of the real estate other than for reinvestment. Section 492 of the Civil Code of Practice does not allow a sale for reinvestment if sale is forbidden by deed or will. The testator had one controlling motive which is found in his will, and that is that appellant should have the life estate and that her children should have the remainder, and that he desired the interest of the children to remain fixed in the real estate during their infancy. He made no further provision, and there is nothing found in the will which would indicate that it was his purpose that the title to the real estate should vest in any persons other than his daughter and her children. The daughter had no children prior to the death of the testator. The will created a contingent remainder, and the title was vested in some person awaiting the eventuation of that contingency. The contingency had not eventuated when the testator died, and the remainder was vested in him awaiting the happening of the contingency, and when he died, appellant inherited the interest of her father in the remainder, which was a remainder in fee subject to be defeated by her having a child, or children, and that means that the interest which she took in remainder by inheritance was what is known as a defeasible fee.

In the opinion of the chancellor, title to the remainder in fee remained in abeyance, and did not vest until the termination of the life estate, and it then vested in the collateral kindred of the testator. That would mean that the title was in nubibus until the termination of the life estate, and that is something which is not allowed under the construction of deeds and wills in this jurisdiction. There is respectable authority in the text-books and in the opinions of courts for the postion taken by the chancellor, but this court holds to the doctrine that there can be no such thing as an unvested title to real estate. The title is in some one at all times. The doctrine that the title hovers about in the clouds, awaiting for the happening of some event, when it can settle and vest in some person, has been repudiated, if it was ever accepted by this court. The authorities cited above are conclusive of that question.

Counsel for appellees insist that the first and paramount rule of construction of a will is to ascertain the

intention of the testator. Assuredly that is the correct rule. Baker v. Baker, 191 Ky. 325, 230 S. W. 293; Ramey v. Ramey, 195 Ky. 673, 243 S. W. 934; Prather v. Watson, 187 Ky. 709, 220 S. W. 532. Counsel then proceed to argue that it was the intention of the testator that his daughter should have only a life estate in the property. That contention is sound, and that is the only interest in the estate that she took under the will. The will, however, is not controlling when it comes to a consideration of the property that passed under the laws of descent and distribution. It is suggested by counsel that the intention of the testator should not be nullified by invoking common-law rules of construction that are purely technical, and which are in conflict with the intention of the testator. It is pointed out that technical rules anciently employed in the interpretation of wills has been abandoned by this court, as is shown by its opinions in the cases of American Christian Mission Society v. Tate, 198 Ky. 621, 250 S. W. 483; Ewering v. Ewering, 199 Ky. 450, 251 S. W. 645; and Gillespie v. Winston's Trustee et al., 170 Ky. 667, 186 S. W. 517. There is nothing in the cases cited which, in any way, conflicts with what has been herein written. No one contends that appellant took more than a life estate under the will of her father.

It is pointed out by counsel for appellees that it is a rule of construction that the testator's intention, at the time of executing the will, should control its interpretation, if such intention can be ascertained from the language of the will, and from the circumstances which surrounded the testator at the time he executed it. It is argued that the construction which the courts placed on the character of estate which passed under similar wills, at the time of the execution of the will under consideration, should be considered as having influenced him in making the will, and as indicative of his intention that the will should similarly operate, and that the fact that the judicial construction placed on wills at the time of execution should be subsequently changed by the courts, should not be allowed to defeat the intention of the testator at the time the will was made. No such question is before us. There is no difficulty about the construction of the will. The question presented by this record is not so much a construction of the will as a question of what became of the undisposed of estate. It is true that the chancellor found that the proper construction of the will was to hold that the entire title to the real estate

passed out of the testator under the will, at the time of his death, and that it remained in abeyance and will so remain until the termination of the life estate. But an examination of the will shows that there was nothing in the will, according to the views of this court, that justified the placing of such a construction on it. Appellees rely on the case of Hood et al. v. Pennsylvania Society, 221 Pa. 474, 70 A. 845, 846. In that case the court said:

"It is true, as a general principle, that when courts of a given jurisdiction depart from a rule of construction applied, e. g., to the language of wills, and adopt another at variance therewith, it is to be regarded as an expression of a judgment by the courts that the law as modified was always the correct view to take of a particular question, and that earlier expositions of the law were erroneous. It is, however, equally true that, where judicial decisions have given to certain language a definite construction and meaning, the intention of the testator in the use of such language can only be reached by giving to the words employed by him in his will the meaning which had been fixed by judicial determination at the time when the will was made or when it went into effect.

"Such a course would seem to be necessary, in order to avoid the thwarting of a testator's intentions and to prevent the doing of great wrong to those who may have acquired estates or entered into obligations upon the faith of the law being that which it had been decided to be.

"In the construction of every will it is incumbent upon the courts to endeavor to ascertain the intention of the testator. To do this is of more importance than to adhere to a rule of construction. In any case, how can the intention of the testator in the use of certain words be better determined than by knowing what meaning the courts have attached to such words?"

In considering the intention of the testator as gathered from the language used in the will, we cannot read into it anything which by any fair intendment would show that the testator intended to prefer his collateral kindred to his daughter in the event she should have no children. There is nothing in the will showing that the testator had any idea in mind, other than that the daugh-

ter should take a life estate, and that her children should take the remainder. If she had no children, the testator did not say that she should not take the remainder by inheritance in preference to his collateral kindred.

40 Cyc. page 1385 thus states one of the rules for the construction of wills: "As respects laws in effect at different times in the same jurisdiction, the law existing at the time the will was executed may be referred to in determining the testator's intentions; but the operative effect of the will and the rights of the parties thereunder are to be determined by the law in force when the rights of the parties accrue, and this ordinarily is the law existing at the time of the testator's death, as against a law passed thereafter, or as against a law existing when the will was made, unless a contrary intention appears in the will."

In the case of Carpenter v. Browning, 98 Ill. 282, the Illinois Supreme Court said: "The state of the law at the time of the execution of a will often affords material assistance in arriving at the intentions of the testator when they would otherwise be doubtful."

A will speaks from the death of the testator. Section 4839, Ky. Stats. The Pennsylvania case, relied on by appellees and cited above, in discussing laws influencing construction of wills, refers to such laws at the time of the execution of the will, or at the time of the death of the testator. Under the laws of our state, a will has no effect until after the death of the testator. It neither confers nor divests any rights while the testator is living. Dazey v. Killam, 1 Duv. 403; Crawford's Heirs v. Thomas, 114 Ky. 484, 54 S. W. 197, 55 S. W. 12; Coleman v. O'Leary's Executor, 114 Ky. 388, 70 S. W. 1068.

If it should be conceded that the opinion in the case of Bohon v. Bohon, 78 Ky. 408 was the official pronouncement of this court at the time the will was written, and upheld the doctrine that the title passed from the testator and remained in abeyance, yet the opinion in the case of Coots v. Yewell, 95 Ky. 367, 25 S. W. 597, 26 S. W. 179, 16 Ky. Law Rep. 2, was written before the death of the testator, and it announced principles since adhered to in conformity with the conclusions reached in this opinion. If we consider the law as it stood at the time of the death of the testator, and the will speaks only from that date, we would be governed by the opinion in Coots v. Yewell, supra.

The opinion in the case of Bohon v. Bohon, supra, however, was not the only case dealing with the question in 1893, at the time the will before us was written. The case of Herbert's Guardian v. Herbert's Executor, 85 Ky. 134, 2 S. W. 682, 8 Ky. Law Rep. 752, was decided in 1887. It is entirely in harmony with the conclusions expressed in this opinion, and it may be said with authority that it is the first opinion announcing the doctrine of a defeasible fee in cases such as the one under consideration. The court clearly held in that case that the title in remainder was not in abeyance during the continuance of the life estate. Applying the principles announced in that case to the one now before us, it is obvious that the court would have held that appellant took a life estate under the will, and a defeasible fee in the remainder by inheritance from her father. There appears to have been no departure from the rule since that time, and in fact, unless Bohon v. Bohon, supra, is out of line, the opinions on the question are uniform.

A contingent remainder is defined in Page On Wills, sec. 1119 (2d Ed.) as follows: "A future estate is contingent if the person to take is not in existence, as where the gift is to children, heirs of the body, and the like of one who, at that time, has no living descendants."

The devolution of a contingent estate is thus described in Page On Wills, sec. 1120 (2d Ed.): "If contingent interests are created, the interest until such contingency occurs and the interest vests, pass under the residuary clause, if there be one, and if not, descends as intestate property. If the contingent interest fails, the property passed under the residuary clause, if there is one, and, if not, it descends as intestacy."

The rule as stated by Page has been changed by the provisions of section 4843 Ky. Stats., as it relates to the passing of a contingent interest under the residuary clause of a will. That section provides that such interest shall not be included in the residuary devise contained in the will unless the will itself so provided. All such estates pass as in cases of intestacy whether or not there is a residuary clause, unless a contrary intention appears in the will. This court is, therefore, harmonious on the question so far as its own opinions are concerned, and is in harmony with the rules found in the opinions of a majority of the courts and standard text-writers.

But it is argued by counsel for appellees that the opinion in the case of Crawford v. Hisle, 214 Ky. 536,

283 S. W. 1019, adheres to the principles announced in Bohon v. Bohon which is the lone exception to the general rule adhered to in the opinions of this court. The conclusion reached in that case is not out of harmony with the other opinions, although there is some language in the opinion that may be susceptible of a meaning not in harmony with the general rule. The conveyance in that case was to a son for life, with the remainder to his legal heirs. The court correctly held that he took only a life estate, and that all title passed out of the grantor, and it is apparent that the son had legal heirs at the time he accepted the deed in whom the remainder vested.

In conclusion, we reiterate that, under the will of Robert Downing, his daughter took a life estate and that the contingent remainder for the benefits of her children did not pass from the grantor, because she had no children at the time of his death. As there was no taker, or takers, of the remainder at the time of his death, the daughter inherited from her father a defeasible fee in the remainder, and that she holds the remainder in the fee subject to its defeasance resulting from her having children. She owns a life estate in the property under the will of her father, and she owns a defeasible fee in the remainder by inheritance. The appellees have no interest in the property.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.