GEO. W. GIVEN'S ADMR. *v.* JOHN S. SHOUSE, ET AL.

[Abstract Kentucky Law Reporter, Vol. 5—419.]

**Power of Administrator Under a Will to Lease Coal Lands.**

Where a testator directed his executors to retain the control of certain land for the period of five years, or for a longer period if they thought it to the interest of his estate, and after that they were directed to sell it and give one-third of the proceeds to his widow, one-third to a daughter and the remainder to trustees for benevolent purposes, the income of the estate to be given to his widow, it sufficiently appears that the executor or administrator has the power to lease the land during the time before its sale when it appears to be to the best interest of the estate to do so.

**Validity of a Devise for Charity.**

Where a testator gives a portion of his estate to two named persons to be devoted by them to such benevolent objects and purposes as they may elect, and requesting them in making distribution to give preference to charities connected with or under the control of the Christian Brotherhood, the devise is valid and is not prohibited by statute. Such a devise is a conveyance to the benevolent institutions of the Christian Brotherhood.

APPEAL FROM LINCOLN CIRCUIT COURT.

November 22, 1883.

OPINION BY JUDGE PRYOR:

The testator, Dr. G. W. Givens, at the time of his death owned

a considerable estate, a portion of which consisted of mountain land valuable only for the coal under its surface. By his will he directed his executors to retain the control and possession of this mountain land for the period of five years after his death or for a longer period if they thought it to the interest of his estate. After the five years, or after their discretion terminated as to use and possession, they were to sell the land and give to his widow one-third of the proceeds, his daughter one-third and one-third to Elders John Shouse and Simeon King, to be devoted by them to such benevolent objects and purposes as they may elect, having confidence in their integrity and discretion to make a faithful apportionment and distribution of the fund to charitable and benevolent objects and purposes. He requested them in making the distribution to give preference to charities connected with or under the control of the Christian Brotherhood. In the fourth clause of the will he requested certain sums of money to be paid to his wife and daughter from the profits and rents realized from his estate, including any rents and profits realized from the Laurel county land, etc.

This action was instituted for the purpose of having the will construed. It was instituted by King and Shouse as the trustees of the charitable fund, the plaintiffs also claiming that any lease of the land would render the devise valueless. The administrator, widow, heirs and devisees file answers alleging that it is to the best interests of all parties that the land should be leased, and that the coal mines or land, if undeveloped, will cause great loss to them, and. if opened and worked will greatly enhance their value. They insist upon leasing this land on the one hand, and the trustees, King and Shouse, resist it on the other. A demurrer was sustained to their answer, and no other question being raised of the right to lease the property the judgment was against the widow, administrator and devisees.

It seems to us the only question to be considered on this branch of the case is as to the power of the administrator, widow, etc., to make the lease. It was certainly the intention of the testator that his executors should make some use of this land; and taking the allegations of the answer as true, the value of its use consisted in developing the mines and making the property on that account more valuable, and if it enhance the value and would in all probability prove beneficial to all the parties in interest, and this the demurrer admits, the lease

should have been made. Each parcel of his estate was to be used for the purposes for which it was adapted, in order that profits might be realized to produce an income for the support of his family, and it is evident that no rents or profits could accrue from this land unless the mines were opened. This was the only method for improving the land in Laurel county if what the answer states is true, and the chancellor should consider the interest of all the parties in determining the question. The profits or rents should not be denied the widow and heirs or the principal devisees upon the idea that the development of the mines might injure the land when the proof or admissions conduce to show that it will enhance their value.

The lease of the land is not a sale of it and any reasonable use of the property that will not result in greatly impairing the rights of the trustees should be permitted. Why did the devisor give to his widow and child the profits, if he had not supposed that this land would have been so used as to produce an income for their support, or for the benefit of his estate? Not for the appellees, for they are not entitled until the sale is made. This sale should be made within a reasonable time, when it is to the interests of the estate to sell, and that matter the chancellor can control. When the case returns to the lower court the chancellor should hear proof on the issue made, and if none is offered showing that it is to the injury of the property, the parties should be permitted to make the lease.

The second question presented arises from the devise to the appellees for charitable and benevolent purposes. It is insisted that a devise to benevolent purposes is not a charitable devise. This question is disposed of by a reference to Gen. Stat. 1881, ch. 13, § 1, which chapter provides that all grants, devises, gifts, etc., to the poor, schools of learning, colleges, children's asylums, orphan, etc., or for any other charitable or benevolent purpose, shall be valid except as hereinafter stated. There is nothing in the statute in the way of restriction that prohibits a devise or grant to a benevolent institution or for a benevolent purpose as distinguished from a charity, but on the contrary one of the purposes of the act was to prevent the failure of the devise or grant for the reason only that the devise was not to a charitable institution or to what was recognized as a public or private charity; and therefore, the devises based on the English Statute, 43rd Elizabeth, have no application to this case. Eng. Stat. 1595-1660, p. 43.

It is urged, however, that the devise is of too uncertain a character, and the court must be unable to decide who was intended to be the beneficiaries of the testator's bounty, and therefore, the estate attempted to be disposed of to the appellees passes by inheritance. The case of *Attorney General v. Wallace's Devisees,* 7 B. Mon. (Ky.) 611, is analogous to the case before us and sustains the devise. In that case the devise was of one-fourth of the estate "to such charitable and benevolent institutions as may appear to be most useful in disseminating the Gospel at home and abroad." The object of the charity was, as this court said, the dissemination of the Gospel, and the general mode of accomplishing his benevolent purpose is pointed out by the testator. How or to whom the charity was to be administered is left to the discretion of the trustees. In this case the testator requests that in the distribution of the fund preference be given to charities connected with the Christian Church. This enlightened body of Christians have two or more charitable and benevolent institutions within the state, and the mode of distribution between them, or how the charity is to be administered, is within the discretion of the trustees. The request is a conveyance or a devise to the benevolent institutions of the Christian Brotherhood, but the mode of distribution is left with these trustees. Whether the devise would be upheld, if this clause of the will had been omitted, is not necessary to be determined. In *Moggridge v. Thackwell,* 7 Ves. Jr. 36, all the cases were referred to by Lord Eldon. The devise in that case was to James Barton desiring him to dispose of the same in such charities as he shall see fit, recommending poor clergymen. That devise was sustained and we see no distinction between that case and the devise made in this case.

The members of the Christian Brotherhood could compel these trustees to execute the purpose and intention of the testator in requiring them to apply the fund to one or more benevolent institutions under their control, when the facts authorized the conclusion that the use of the fund would accomplish the purpose intended by the devisor.

With this view of the case the devise must be held valid, and the judgment below is *reversed* with directions to overrule the demurrer to defendants' answer and for proceedings consistent with this opinion.

*Ward & McAfee, Sam Harding, for appellant.*

*Hill & Alcorn, for appellees.*

[Cited, *Tichenor v. Brewer's Exr.*, 98 Ky. 349, 17 Ky. L. 936, 33 S. W. 86; *Spalding v. St. Joseph's Industrial School*, 107 Ky. 382, 21 Ky. L. 1107, 54 S. W. 200.]