## In re SIMONSON et al.

(District Court, D. Kentucky. March 28, 1899.)

1. BANKRUPTCY—PLEADING—TIME TO ANSWER—UNAUTHORIZED EXTENSION.
Under Bankrupt Act 1898, § 18, subsec. b, providing that, in cases of involuntary bankruptcy, "the bankrupt or any creditor may appear and plead to the petition within ten days after the return day, or within such further time as the court may allow," the time to plead cannot be extended for two months from the return day by an agreement between counsel for the petitioning creditors and counsel for the bankrupt, without leave of the court, and without the consent of other creditors, especially in a case

where, the allegations of the petition being simple and easily answered, the court, if applied to for that purpose, would not have extended the time.

2. SAME—DEFENSES—AGREEMENT TO COMPROMISE.

It is not a defense to a petition in involuntary bankruptcy that the petitioning creditors had previously agreed to compromise with the debtor on receiving half the amount of their claims, where it appears that such agreement was not founded on any valuable consideration, and was not carried into effect, and it is not alleged that the agreement of one creditor was made the basis for the agreement of any other creditor.

3. SAME—PETITIONING CREDITORS—ESTOPPEL.

Where a debtor makes a general assignment for the benefit of his creditors, and certain creditors appear in the state court having jurisdiction to administer the estate under such assignment, and there prove and assert their claims, they are not thereby estopped to file a petition in involuntary bankruptcy against the debtor, alleging such assignment as an act of bankruptcy.

4. SAME—DEFENSES—MOTIVE OF CREDITORS.

Where creditors had agreed to compromise with their debtor on the basis of receiving half the amount of their claims, but the agreement was not carried into effect, and afterwards the debtor made a general assignment, and the proper state court took jurisdiction of the assigned estate, and thereupon the creditors filed a petition in involuntary bankruptcy against the debtor, and the latter, for answer thereto, averred that the petition was not brought in good faith, but for a sinister motive, and to enable the creditors to obtain a larger proportion of their debts than they had agreed to accept under the compromise arrangement, or would recover in the proceedings in the state court, *held* no sufficient defense; the motive of the creditors being immaterial.

5. SAME—VERIFICATION OF PETITION—WAIVER OF OBJECTIONS.

If the respondent to a petition in involuntary bankruptcy does not seasonably object to the petition on the ground of any informality or insufficiency in its verification, but files a plea and answer on the merits, he will be deemed to have waived such objections, and cannot afterwards have the proceedings dismissed on account of such defective verification.

6. SAME—SUFFICIENCY OF VERIFICATION.

Quære, whether a petition in involuntary bankruptcy can properly be verified by the affidavit of the attorney for the petitioning creditors, deposing partly on information and belief, and not showing, in such affidavit, express authority to make the verification.

In Bankruptcy.

Kohn, Baird & Spindle and Barnetts & Poston, for petitioning creditors.

M. A., D. A. & J. G. Sachs, for bankrupts.

EVANS, District Judge. On the 5th day of December, 1898, the co-partnership firm of Simonson, Whiteson & Co. made a general assignment for the benefit of its creditors to L. Comingor. The latter accepted the trust, and was promptly qualified to act by the Jefferson county court, before which he executed the bond and took the oath required by law, and entered upon the discharge of his duties. On the 8th day of December, 1898, the trustee brought a suit in the Jefferson circuit court for the settlement of his trust; seeking, also, the advice and judgment of the court as to the proper disposition to be made of the assets of the bankrupt firm, which, in the main, consisted of a large stock of merchandise, certain book accounts, notes, bills receivable, etc. On the 31st day of January, 1899, the merchandise, after only three days' advertisement in the manner directed by

the state court, was sold for a lump sum, and the proceeds were paid into the state court, and are still held in its custody. It seems that in the meantime negotiations for a compromise and settlement of the firm's indebtedness were begun, but, though some progress was made, the settlement was not effected; and on the 14th of February, 1899, these proceedings in involuntary bankruptcy were instituted by three of the creditors of the firm, whose debts amounted, in the aggregate, to about $20,000. The nature and amount of the debt due each of the petitioning creditors were set forth in apt and explicit language, and the one single act of bankruptcy alleged was that the debtor firm had made a general assignment for the benefit of its creditors. A copy of the deed of assignment was filed and exhibited with the petition, as was also authentic evidence of the acceptance of its provisions by the trustee, and his due qualification by the state court having jurisdiction of the subject. Service of the petition, with a writ of subpœna, was made upon the members of the co-partnership firm on February 15, 1899. The subpœna had been made returnable on the 28th day of the same month. Judge Barr (the district judge) having resigned, to take effect February 21st, and having on that day retired from the bench, there was a vacancy in the judgeship until his successor was appointed; and on February 27th Circuit Judge Taft designated Judge Thompson, of the Southern district of Ohio, to act in the meantime. Without applying to him for any order, the counsel, respectively, of the petitioning creditors and the defendant firm, acting alone, and without regard to other creditors, executed and filed in the clerk's office of this court an agreement, in writing, to the effect that the defendants might have time until April 28, 1899, to plead. Meantime, on the 20th day of February, Judge Barr had denied a motion for the appointment of a receiver made by the petitioning creditors on February 17th. Thus matters stood when the present judge of the court reached Kentucky, on the 10th day of March; that also happening to be the date upon which the 10 days expired after the return day fixed in the subpœna, and within which it was the duty of the defendants to plead, unless time for doing so was extended by the court. On the day after his arrival, his attention was called to the situation of this case, and he directed that notice to counsel be given of the necessity for some action in it on the following 14th inst. The matter, being mooted then, was postponed until the 17th, when the defendants tendered a paper which was denominated a "plea and answer," certain other creditors tendered petitions asking to join in the prayer of the original petition, and all sides tendered certain affidavits. The petitioning creditors objected to the pleading tendered by defendants as being insufficient, asked to withdraw the agreement extending the time to plead, and also insisted that there should be an adjudication of bankruptcy on the case made out by the petition and exhibits, in the absence of a sufficient pleading showing grounds to the contrary.

It will be observed that four months from December 5, 1898, when the general assignment was made, would expire on April 5, 1899; and yet the agreement filed, if given effect by the court, would carry the time for pleading more than three weeks beyond the latter date. It

is not suspected that there was any actual or contemplated collusion in this case, but, if such a practice were tolerated without the consent of all creditors of a bankrupt, it might be possible, by such an undue extension, to lull the vigilance of other creditors, and, after the expiration of four months, collusively to secure a dismissal of the petition. A practice which would permit this, or make it possible, should not be approved. Doubtless, in this case the only expectation was to secure a settlement by compromise; but that effort has evidently failed, and, as the bankrupt law provides abundant means for a composition, no delay is needed on that account.

Section 18 of the bankrupt act, after providing for the service of the petition and subpœna in such cases, and requiring that the subpœna shall be returnable within 15 days, unless the judge fixes a longer time, also provides:

"That the bankrupt or any creditor may appear and plead to the petition within ten days after the return day or within such further time as the court may allow."

And subsection e of section 18 is in the following language:

"If on the last day within which pleadings may be filed none are filed by the bankrupt or any of his creditors the judge shall on the next day if present, or as soon thereafter as practicable, make the adjudication or dismiss the petition."

This requirement of the law appears to be imperative, though, in cases where all the creditors of the bankrupt might consent to waive it, its relaxation would not be improper. Here no one except the petitioning creditors and the alleged bankrupts were parties to the agreement to extend the time to April 28th. The court had not allowed the extension, and the allegations of the petition in this case being so few and so simple, and particularly as the act of bankruptcy had manifestly been committed, it could not have been appropriate to allow the extension to April 28th, even had the court been applied to for that purpose. It will be observed that there are only two classes of averments in the petition, namely: First, those which state the nature, origin, and amount of the respective debts of the petitioners; and, second, those which state the act of bankruptcy. The latter averment is not only supported by the documents exhibited with the petition, but was in every way admitted at bar by defendants' counsel. Of course, therefore, no longer time need be allowed as to that portion of the petition. Neither could there have been any need for extending the time to plead to the other averments, because it could not have been difficult for the alleged bankrupts (an experienced business firm) to know perfectly well, and at once, whether they owed the debts or not, and it was easy for them specifically to say so. The court, therefore, if the matter had been presented to it, should not have extended the time to plead beyond March 11th, and certainly not beyond March 17th, when the pleading was in fact presented, unless all the creditors of the bankrupts had agreed to it, in which event, of course, it would have injured no one.

These views were indicated to counsel on the 14th inst., and on the 17th, the day when the matter was again called up, the debtors tendered and asked leave to file what they called a "plea and an-

swer." The creditors objected to this being done, upon the ground that the pleading presented no defense whatever, and was wholly insufficient. The pleading, technically considered, being offered too late, it is within the sound discretion of the court to allow, or not to allow, it to be filed; but, if it contained any defense whatever to the action, the court would not hesitate to exercise its discretion in the direction of permitting the defense to be made. Analyzing the plea and answer, it is found to contain four supposed grounds of defense, to wit: First. It attempts to appear to deny, rather than to deny in fact, the allegations of indebtedness made in the petition. But it is manifest that the defendants do not mean to actually controvert the averments of the petition that the goods, wares, and merchandise were sold and delivered to them, and received by them, at the prices and to the amounts stated in the petition. The only real claim is that the respective creditors had, after the act of bankruptcy, voluntarily, and without any valuable considerations, so far as shown, agreed to settle their debts by accepting 50 cents on the dollar, but had not done so. Second. That the petitioning creditors had appeared in the state-court proceedings, and had proved and asserted their claims against the funds in that court, whereby it is contended that they are estopped from bringing this action. Third. That the creditors would get as much on their demands in the state-court proceedings as they can get here. And, fourth, that this proceeding was not brought in good faith, but for a sinister motive, and for the purpose of obtaining more on their debts than they had agreed to take under the proposed compromise.

In the opinion of the court, it is entirely clear that the plea and answer present no meritorious defense, and are insufficient. The pleading cannot, in any fair sense, be said to controvert or avoid any material allegation of the petition, either as to the indebtedness or act of bankruptcy alleged. There does not appear to have been any binding composition or compromise agreed upon or executed upon any consideration whatever. The appearance of the creditors in the state court in no way estopped them from bringing this action. Creditors might find it wise to go to the state courts in such a case, as it was by no means certain that there would be any proceedings in bankruptcy. The bankrupt act furnishes no foundation, in any of its provisions, for the contention that there is an estoppel. If invoked in a proper proceeding, the bankruptcy act was meant to be supreme and controlling in every case to which it applies; and it gives no hint that its operation for the equal benefit of all creditors can in that way be defeated by a few of them, nor by the suit of the assignee in the state courts. Neither of those propositions can be admitted. Manifestly, a good cause of action is stated in the petition; and, this being so, it cannot be admitted that there is a good defense to it in any general averments that the plaintiffs were not acting in good faith, even if they did hope (as it is surely admissible that they might) to get a larger dividend in these proceedings through a proper administration of the bankrupt law than they would in the state court, or by means of a voluntary compromise. Whatever the motive of a plaintiff may be, if he state a good cause of action he has

the right to bring his suit; and rare, indeed, must be the occasion when his right to sue can be made to depend upon his motive in doing so, rather than upon his cause of action.

It may be well to add that the alleged agreement to accept 50 cents on the dollar in full settlement is not well pleaded. It fails to show an accord and satisfaction of the debts; no consideration is alleged; no statement is made that the agreement of one creditor was made the basis for the agreement of any other creditor; no satisfaction of the original demands was shown; and, in short, no averment is made to bring the pleading within the rules laid down in cases like Robert v. Barnum, 80 Ky. 28; Huffaker v. Jones, 13 Ky. Law Rep. 432; Rosenthall v. Jacobs, 5 Ky. Law Rep. 419; and Newman v. Evans, Id. 603.

As no defense is presented by the answer, the court, alike in the exercise of its discretion, and on the merits of the proposition, overrules the motion of defendants for leave to file the plea and answer which are offered out of time.

It seems proper for the court to add that it is not regarded as good practice, nor one to be followed, after a petition in involuntary bankruptcy has been instituted, and after the court has thereby acquired jurisdiction of it, to permit it either to be made inept or inoperative by such an agreement as that filed here, nor by dismissing the action on the motion of the petitioners, unless in either case substantially all the creditors agree, or, after due notice, fail to object, to it. Of course, everything might yield to the unanimous consent of all who had an interest in the question, especially as they could control it after an adjudication had been made.

On the 21st inst., when the court had reached this point in the preparation of its opinion, the defendants again appeared, and moved the court to dismiss the proceedings because the petition had not been properly verified. This raised a very important question of practice, vitally affecting the proceedings, and the court adjourned the case over for further argument upon this new point. The verification of the petition is in the following language:

"Commonwealth of Kentucky, County of Jefferson.

"I, T. W. Spindle, do hereby make solemn oath that I am a member of the firm of Kohn, Baird & Spindle, and that the said Kohn, Baird & Spindle are solicitors for all of the petitioners above named, and that all of the statements contained in the foregoing petition are true, so far as the same are stated of my own personal knowledge, and those matters which are stated therein on information and belief are true, according to the best of my knowledge, information, and belief; and I do further state that all of the said petitioners, and all of the officers and agents of the said Sensheimer, Levenson & Company, are now absent from the state of Kentucky.          T. W. Spindle.

"Subscribed and sworn to before me by T. W. Spindle this fourteenth day of February, 1899.          Sam'l S. Lederman, N. P. Jeff. Co., Ky.

"My commission expires January, 1900."

The bankrupt act certainly requires that all pleadings setting up matters of fact shall be verified under oath, and it may be assumed that the petition is a pleading, within the meaning of the act. It is apparent, also, as an original proposition, that the oath should be taken by one who can swear to the facts as being within his knowl-

edge, and not by a mere attorney at law or solicitor, although section 1 of the act does provide that the word "creditor" may include a duly-authorized agent, attorney, or proxy. The implied authority of an attorney at law or solicitor was probably not in the contemplation of congress in the use of that phrase. The supreme court, in framing the rules in bankruptcy, has indicated its opinion in the matter by prescribing the following as the form of verification to a petition in involuntary bankruptcy proceedings, namely: ·

"United States of America, District of ——, ss.:

"——, ——, ——, being three of the petitioners above named, do hereby make solemn oath that the statements contained in the foregoing petition, subscribed by them, are true.

"Before me, ——, this —— day of ——, 189–.

"_____.

"_____."

Of course, the rules, in a general sense, are obligatory; but the practice in bankruptcy cases must be reasonably adapted to practical conditions, and the rules should be applied to promote the ends of justice, and not to the attainment merely of literal and technical exactness in formal matters. For example, although the forms pre-scribed indicate that the petitioners' names must appear on the right-hand side of the page, and those of counsel on the left-hand side, it does not follow that any departure from that order would be fatal. The petitioners, speaking generally, should certainly swear to the petition in person, though it might be that a duly-authorized agent might, under some circumstances, properly verify it, at the same time showing by his affidavit his authority. Unquestionably, the filing of a petition alleging an act of bankruptcy, which, connected with the prayer for an adjudication, is the subject-matter of the action, brings the case within the jurisdiction of the court, although it leaves to the defendant the right to avail himself of all his technical privileges. The defendant in such a case is, at his option, entitled to have all the requirements of law and the rules conformed to. Those requirements are made for his benefit. They afford him a shield, and he can, if he desires, check the progress of the proceedings by insisting upon compliance with them. But, being prescribed for his benefit, he may waive them; and, if he does, it is nobody's concern but his own. Once having waived them, he cannot afterwards be allowed to retract the waiver. This is a principle of universal application in matters of pleading. When the subpœna was served in this case, and the time for pleading had arrived, if the defendant, at any time during the 10 days allowed him, had challenged the right of the plaintiff to insist upon any pleading from them, it is manifest that they would have been entitled to a ruling that none could be required until there had been a proper verification of the petition; and meantime the defendants could have demanded a quashal of the subpœna and the service thereof, because the petition had not been so sworn to as to warrant the issual of the process. If the objection to the form of verification had been seasonably made, no doubt it would have prevailed, in which event an opportunity to secure a proper verification would have been allowed; but the defendants, instead of making any objection

in a matter which was possibly of some concern to themselves, and to themselves alone, in effect said to the court that it was not material to them, and that what they wanted was, not to make objections to form, but to secure an extension of time within which to plead. When that request was not approved by the court, they still passed over the formal and erroneous way of verifying the petition, and prepared and tendered an answer to the merits of the case; setting up what they intended should be, and supposed was, a full defense to the action. The case, at that point, and eo instanti that proceeding, passed beyond that stage when·the previous formal steps were important. The defendants had then voluntarily left those matters behind, as immaterial, and the case had then advanced to the point where matters of substance were to be considered; and it seems to the court that the defendants had clearly waived any right afterwards to raise those questions, which, though previously important to them, had ceased to be so by their own plainly-implied consent to the contrary. The rule prescribed by the supreme court on this subject does not say that, unless a petition is verified in the precise manner indicated in the form, it shall be unavailing and void. Nothing of this sort is intimated in any positive sense. But in case the form is not literally followed, and in case the directory provisions of the act are not literally pursued, a defendant may avail himself of the defect, or he may waive those purely personal advantages or privileges. But to say that a slip made in the preparation of a petition (it may be, in the hurry rendered necessary by some suddenly developed exigency) should be fatal, would be indeed a sacrifice of substance to form. and the widest possible departure from all modern notions of the liberality and flexibility of rules of practice in courts of justice. We doubt if congress or the supreme court intended such a result. To say that a slip of the character indicated might be purposely disregarded or ignored by the defendant· until after four months had passed, or, indeed, until after the whole proceeding was about concluded, and then be returned to and resurrected for the purpose of undoing all that had been done, would seem to be out of all reason. Yet that would be the direct and necessary result of a rigid adherence to the decisions in such cases as Hunt v. Pooke, 5 N. B. R. 161, Fed. Cas. No. 6,896; In re Butterfield, 6 N. B. R. 257; and Moore v. Harley, 4 N. B. R. 71, Fed. Cas. No. 9,764. The court is glad to be relieved from the stress of those decisions by the very much better reasoned opinions in all the later cases, such as In re Raynor, 7 N. B. R. 536, Fed. Cas. No. 11,597; In re McNaughton, 8 N. B. R. 44, Fed. Cas. No. 8,912; and In re Simmons, 10 N. B. R. 254, Fed. Cas. No. 12,864.

Upon this point the court has therefore reached the conclusion that the objection to the form of verification of the petition in this case comes too late. It seems to the court that the proper time to raise the objection ended with the tender of the answer to the merits, if not previously. The plain admission of the alleged act of bankruptcy emphasizes these conclusions. If the defendants had secured the extension of time to plead to the 28th of April, and if they could at that late date have made and maintained the objection that the failure

to properly verify the petition was jurisdictional and fatal, a dangerous precedent would have been established, from which much collusive harm might come, and the ends of justice and the wise purposes of the bankrupt act entirely frustrated, in many cases. The motion to dismiss the petition for want of proper verification is therefore overruled.

Upon the whole case as it now presents itself under section 18 of the bankrupt act, it seems to the court to be its imperative duty to make an adjudication as soon as practicable after 10 days have expired after the return day fixed in the subpoena; and as no reason has been suggested, legally sufficient to prevent or further delay it, the adjudication will be made now.