## Paducah Cooperage Company v. Cotton Plant Stave Company.

(Decided June 2, 1922.)

### Appeal from McCracken Circuit Court.

1. Contracts—Renunciation.—The renunciation of a contract by one of the parties to it must be clear and unmistakable in order to impose upon the other party the duty of taking steps immediately to minimize his damages.

2. Contracts—Sale of Staves—Forfeitures.—Under a contract for the sale of staves for delivery during certain months, the seller has the right to postpone deliveries at the request of the purchaser or the alternative right of declaring the contract forfeited at the end of the period during which the staves were to be delivered and then to sell the staves for the best price obtainable charging the loss to the purchaser.

3. Damages—Breach of Contract.—Evidence examined and held to show that the breach of the contract sued on occurred January 31st, in view of which it was not error to instruct the jury as a matter of law that the breach occurred on that date.

MOCQUOT, BERRY & REED for appellant.

WHEELER & HUGHES for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

On November 22, 1918, appellant entered into a contract with appellee for the purchase of 50,000 34x¾ red oak staves at $75.00 a thousand and 50,000 white oak mill run staves, same specifications, at $85.00 a thousand f. o. b. cars Cotton Plant, Arkansas, inspection to be made at point of shipment. It was agreed that the shipment should be made during the months of November and December.

The contract consists of letters and telegrams exchanged between the parties. Numerous efforts were made by appellee to induce appellant to send an inspector to its yards to inspect the staves and carry out the contract, but appellant offered excuses from time to time, and failed to do so. However, it repeatedly promised to have the inspector report so soon as practicable and on several occasions informed appellee that he would report on a designated day. On December 11, 1918, appellant wrote in response to a letter of December 10th that if its inspector failed to report at the yards on the following Monday the appellee might load the staves for shipment

and forward them to appellant at Paducah, drawing on it for 75% of the full amount of the invoice price. In reply to that letter appellee stated that it preferred to have the inspection made at its yards, as provided in the contract, but would accede to appellant's suggestion if the inspector did not report on the following Monday to take up the stock. The next day appellant requested appellee by letter not to load the staves and ship them as authorized in its letter of two days earlier and assigned as its reason for the notice that it had such a congestion of cars at Paducah that it was impossible to handle any more staves at that time. It requested that the shipment be held up for a few days. Three days later appellee was again notified by telegram and letter not to load the staves for shipment but was informed that they would be received so soon as the situation at the yards at Paducah permitted. Thereafter several letters were written by appellee urging appellant to comply with its contract, to which no replies were made, but on January 9th appellant wrote appellee that the weather had been such that it did not care to attempt to inspect the staves, that its yards had been congested for the past six weeks and only in the last few days had the situation shown any improvement, and that it would endeavor to send an inspector some time during the month of January; in fact would agree to give the inspection of that purchase preference. Appellant failed to send an inspector during January and beginning with the first of February appellee sold the staves as rapidly as possible at the best market prices obtainable. According to its evidence the loss sustained by reason of the failure of appellant to carry out its contract amounted to $2,250.00. On the trial in the circuit court a judgment was rendered in favor of appellee for $2,125.00.

Appellant is seeking a reversal of the judgment on the ground that the contract was breached on December 16, 1918. If it be held that the contention is sound, then it is said that appellee was only entitled to nominal damages, since the evidence tends to show that there was no decline in the market price of staves during the month of December, and appellee by the exercise of reasonable diligence might have sold the staves during the latter part of that month for as much as appellant had agreed to pay for them. Neither of these propositions is sustainable under the proof in the case. But even if the second be conceded it is wholly dependent upon the establishment of

the first and there is no possible ground for holding that the contract was breached on December 16th.

Almost immediately after the contract was concluded appellee began to insist on having the staves inspected and shipped. Appellant offered one excuse after another for its failure to send an inspector but finally agreed that they might be loaded and shipped according to the terms set out in the letter of December 11th referred to. Before appellee had time to act on that authority it was withdrawn and then on the 16th of December by telegram and letter appellant again notified appellee not to ship the staves. The excuse offered was that its yards were so congested that it could not receive the staves until the situation cleared up. It is that letter that is said to have constituted a breach of the contract.

The letter contained no renunciation of the contract but on the contrary confirmed the existence of it and expressed the purpose of fulfilling it. It may be admitted that appellee had the right at that time to declare the contract forfeited and to sell the staves with the view of minimizing its damages but it was not compelled to take that course. It also had the right to rely on the assurance given by appellant that it would perform the contract. This assurance was renewed on January 9, 1919, and an inspection promised for the month of January. Although appellee had the right to elect to treat the contract as broken, it also had the alternative right of holding the staves during the month of January with the expectation that appellant would comply with its obligations. Paducah Cooperage Co. v. Arkansas Stave Co., 193 Ky. 774, and the authorities therein cited are decisive of the question.

Another insistence is, that the court erred in allowing a recovery in excess of $1,125.00 because in the original petition only that amount of damages was claimed. The contention merits nothing more than a statement of the facts disclosed in the record. On appellant's motion the appellee was required to make its petition more specific; it filed an amended petition to comply with the requirement and, basing its amendment on the contract, increased its claim for damages to $2,250.00. This, of course, it had the right to do and it may be added that the proof amply sustains the damages awarded.

Nor is there any merit in the suggestion that instruction one given to the jury is erroneous. Under the proof the court was justified in fixing the date of the breach of

the contract as January 31st, since appellee was authorized under the letter of January 9th to hold the staves for appellant until that date and did actually hold them.

The breach of the contract was established beyond contradiction. The damages awarded are not excessive and there is no reason in law or equity why appellant should escape the consequences of its own act in electing to repudiate a valid contract.

The judgment is affirmed.