## Gooding et al. v. Watson's Trustee.

(Decided June 3, 1930.)

HUNT & BUSH for appellants.

E. L. WORTHINGTON and BROWNING, REED & ZEIGLER for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

This is an action under the Declaratory Judgment Act (Acts 1922, c. 83) for a construction of the will of Mrs. Elizabeth Parry Watson, who died on December 24, 1928, and for a declaration of the rights of the appellants in the estate held by appellee as executor and trustee, and for a declaration of the obligations and duties of the executor under the terms of her will. The appellant Sudie P. Gooding is a sister of the testatrix, and the appellant Mary E. Peed is a half-sister, and they were her only heirs at law at the time of the death of Mrs. Watson.

Mrs. Watson left an estate consisting wholly of personal property, of the approximate value of $50,000. The appellant Sudie P. Gooding was bequeathed a life estate in the property. All debts have been paid. Upon the death of Sudie P. Gooding, testatrix directed the executor and trustee to make a certain disposition of the corpus of the estate with any accumulated interest unexpended for the comfortable support and maintenance of Sudie P. Gooding. The clause of the will for construction is in the following language:

"All the balance of my property of every kind and description I give and devise and bequeath to the Bank of Maysville, Ky., in trust to invest and reinvest so as to yield as much income therefrom as it may deem consistent with the safety of the investment and to pay same to my sister Sudie P. Gooding for and during her lifetime at such times as she may need same for her comfortable support and maintenance. At her death said trust shall cease and terminate and the principal and such income as has not been already paid to my sister shall be distributed and paid over to such charitable organizations (excluding educational institutions) located in Lexington, Ky., and Maysville, Ky., or both or either,

as in its then judgment may be right and proper. I appoint the Bank of Maysville, Ky., which I have above named as trustee, executor of this my will.''

It is the contention of counsel for appellants that the provision of the will for the disposition of the remainder interest in the estate does not point out with reasonable certainty the purposes of the charity and the beneficiaries thereof as is required by the provisions of section 317, Ky. St. It is contended by them that a will bequeathing or devising property to a charitable use must point out with reasonable certainty (1) the charity, (2) its purposes, and (3) the beneficiaries thereof, and if the will, by its provisions, does not measure up to these requirements it is invalid. It is their contention that the will in question in so far as it attempts to dispose of the remainder interest in the estate to charitable organizations, excluding educational institutions, located in Maysville and Lexington, or in both or either, such organizations that are to receive the benefits to be selected by the executor and trustee in its discretion at the time of the death of the life tenant, is invalid because the will itself does not point out with reasonable certainty any charity, the purposes, or the beneficiaries thereof. They contend that the provision in the will amounts to no more than a power of attorney authorizing the executor and trustee to make a will for the testatrix disposing of the remainder.

Counsel for appellee contend that section 317, Ky. Stats., is merely the modern complement of the Statute 43 Elizabeth, chapter 4, relating to charitable uses, and that it was never intended to vary the effect of the common-law or equitable principles relating to charitable trusts, nor to vary the English statute itself; that it is not a delimiting statute, nor an enabling one, but is only a guide; and that the charitable uses therein enumerated are but examples of such uses long since recognized and approved as a part of the chancery doctrine and jurisprudence in England and in those colonies and states where that branch of the Elizabeth law was taken over and became a part of the substantive law of such colony or state. They contend that charitable trusts and uses were known and well recognized in English law long prior to the enactment of the Statute of Uses and 43d Elizabeth, chapter 4, and that the authorities establish

the principle that indefiniteness of beneficiaries in a public charitable trust is not material, and that one test of a valid public charitable trust is the existence of indefinite beneficiaries who shall ultimately take the bounty of the donor. They combat the argument of counsel for appellants on every point and contend that the will points out with reasonable certainty the charity, its purposes and the beneficiaries thereof.

A will speaks as of the date of the death of the testator, or testatrix, and the law in force at that time determines its validity and its proper construction. Slack v. Downing, 233 Ky. 554, 26 S. W. (2d) 497.

In the case of Moore's Heirs v. Moore's Devisees, 4 Dana (34 Ky.) 354, 29 Am. Dec. 417, this court held that the Statute of 43d Elizabeth was in force in this jurisdiction to the extent that it was applicable to conditions existing in this state. The purpose to be met by the enactment of the statute, as pointed out in that opinion, was to apply some of the doctrines of the civil law to certain charitable donations enumerated in the statute so as to render such gifts valid when they would have been void if there had been no charity, or even with the charity according to the common law. The validity of the statute was upheld so far as its objects were concerned, but the court found that the remedies prescribed were inapplicable to the conditions in this country and were never deemed to be in force in Virginia, and therefore not in force in Kentucky. It was held in that opinion that the cy-pres doctrine in force in England was not and should not be adopted in this state with one exception, "and that is, where there is an available charity to an identified or ascertainable object, and a particular mode, inadequate, illegal, or inappropriate, or which happens to fail, has been prescribed."

Again in the same opinion Judge Robertson, writing for the court, said:

"Whenever the only objection to a devise or legacy is, that it is for the benefit of a class of private individuals described collectively by some characteristic trait by which they may be identified, if the donation be a charity within the statute, and is therefore valid, it is, as a matter of course, as good and available as it would have been, at common law, had it been to a competent person, in trust for

another similar person, identified in the will by his proper name."

In 1867 this court, through Judge Robertson, handed down an opinion in the case of Cromie's Heirs v. Louisville Orphans' Home Society, 3 Bush (66 Ky.) 365, in which the court considered the Statute of 1852 relating to charitable uses and religious societies. This statute, as was pointed out in the case of Adams v. Bohon, 176 Ky. 66, 195 S. W. 156, was the combining and re-enacting of the statutes on the same subject, one adopted in 1814 and the other adopted in 1824. In the Cromie case the court held that the Statute of Elizabeth concerning charities had been constructively abolished in Kentucky, but that it had been substantially re-enacted. This court in referring to the repeal and re-enactment of the Statute of 43d Elizabeth in the Cromie case said:

"And thus, though the ultra-judicial cy-pres doctrines which royal prerogative attached as excrescences to the statute of Elizabeth, had, by its repeal, been cut off as tumors, the aim of our own statute for upholding charities is to make such as it enumerates available whenever so defined as to be judicially identified and applied."

The cy-pres power constituted a peculiar feature of the English system and was exerted in determining gifts to charity when the donor had failed to define them. That doctrine meant that the courts would devise schemes of approximation as nearly to the donor's true design as possible, and the scheme for carrying out the charity so adopted was substituted for the intention of the donor. It was this method of substitution which this court found was unsuited to our institutions and should not be adopted in the jurisprudence of this state on the subject.

It was in 1893 at the first session of the General Assembly after the adoption of the present Constitution of Kentucky that chapter 200 of the acts of that session was enacted, and section 317 of the Kentucky Statutes was enacted in its present form. In the Cromie case it was held that the aim of our statute, that is, the act of 1852, for upholding charities was to make such as it enumerates available whenever so defined as to be judicially identified and applied. The act of 1893 made the

law governing this matter more definite by making such donations valid, "if the grant, conveyance, devise, gift, appointment, or assignment shall point out, with reasonable certainty, the purposes of the charity and the beneficiaries thereof." Section 1.

The validity of the provision of the will of Mrs. Watson in question must be determined in the light of section 317, Ky. Stats., as enacted in 1893, which section was in force at the time of the death of Mrs. Watson and has been continuously in force since its enactment.

In the comparatively recent case of Gill's Ex'r v. Woman's Club of Louisville, 205 Ky. 731, 266 S. W. 378, 380, this court, speaking of section 317 as enacted in 1893, said:

"It follows the statute of 32 Eliz. as construed by this court, and might be said to be a crystallization of our opinions, as applied to the former statute."

The General Assembly, when it enacted section 317 in 1893, wrote into it the essence of the opinions of this court on the point involved in this litigation. In the Gill case the court adhered to its previous rulings that the cy-pres doctrine had never been adopted in this state to the extent of supplying a beneficiary or purpose where those objects are not expressed in the instrument. It is now the settled law of this state that such a charitable bequest, or devise, is valid only when the purposes and objects, as well as the beneficiaries of the charity, are nominated and described with reasonable certainty. This court has adhered rather strictly to the rule that the purposes of the charity must be set out with certainty, but it has been more liberal when dealing with beneficiaries, and it appears to be the general rule that beneficiaries may be described as a class, and that the trustee may be given the power to select a member, or members, of the class described in the instrument creating the charity.

Probably the most weighty opinion on this point is that of Spalding et al. v. St. Joseph's Industrial School et al., 107 Ky. 382, 54 S. W. 200, 201, 21 Ky. Law Rep. 1107. It reviews all of the cases decided prior to that time. The court again repudiated the cy-pres doctrine and reviewed at length the history of the Statute of 43d Elizabeth and the general powers of courts of equity

under the common law independent of that statute, and reached the general conclusion that a bequest, or devise, for a charitable use requires that the donor, or testator, point out with reasonable certainty in the instrument creating the charitable use, the beneficiaries, and the purpose of the charity. In dealing with beneficiaries the court held that a designation of a class of beneficiaries with the power of selection from that class was sufficiently definite if the purposes of the charity were made reasonably certain by the instrument creating it. The will construed in the Spalding case was written prior to the amendment to section 317 of the Ky. Stats., in 1893. The provision of the Spalding will called in question was in this language:

"I bequeath to my brother, the Most Rev. M. J. Spalding, archbishop of Baltimore, all of my real, personal, and mixed estate, and all I may die seised of, for charitable objects, to be expended for said objects in this diocese of Louisville, according to his discretion; and I hereby appoint my said brother the sole executor, without any security, of this, my will."

In that will the purposes of the bequest were "charitable objects," while in the will of Mrs. Watson the purposes were "charitable organizations." The charitable objects in the Spalding will were those in the diocese of Louisville, while the "charitable organizations" in Mrs. Watson's will are those, excluding educational institutions, in the cities of Lexington and Maysville. In the Spalding will the "charitable objects" were to be determined at the discretion of the trustee, and the same is true in the will of Mrs. Watson. The final conclusions of the court were summed up in this language:

"It may be that, if a class of charitable objects had been designated which included both public and private charities, the court would, in favor of one of those 'peculiar favorites of modern jurisprudence,' presume that those charities of the class which were public were intended. But it does not do that. It selects no class or individual out of the wide range of objects which, under the decisions of this court, can be considered charities. It does not even provide that it shall be given to a charitable use, the provision being that it shall be expended for char-

itable objects. We cannot tell whether the object selected by the executor would be approved by the testator, for no guide is left us by him from which to ascertain his desire. After a careful consideration of this will, we are constrained to the conclusion that it amounts to nothing more than a power of attorney to make a will for the testator, and that this cannot be done in Kentucky.''

The opinion in the Spalding case brought into harmonious interpretation all of the opinions of this court on the subject written prior to 1899. It is unnecessary, therefore, to discuss the cases of Curling v. Curling, 8 Dana (38 Ky.) 38, 33 Am. Dec. 475; Attorney General v. Wallace, 7 B. Mon. (46 Ky.) 611; Given's Adm'r v. Shouse, 5 Ky. Law Rep. 419, 12 Ky. Op. 372; Peynado v. Peynado, 82 Ky. 5; Tichenor v. Brewer, 98 Ky. 349, 33 S. W. 86, 17 Ky. Law Rep. 936; Bedford v. Bedford's Adm'r, 99 Ky. 273, 35 S. W. 926, 18 Ky. Law Rep. 193; Crawford v. Thomas, 114 Ky. 484, 54 S. W. 197, 55 S. W. 12, 21 Ky. Law Rep. 1100. These opinions were all before the court when the opinion in the Spalding case was written, and that opinion contains such an exhaustive discussion of the law as announced in previous decisions that we deem the opinion in the Spalding case as the authoritative pronouncement of this court on the subject up to that time. All previous opinions were merged in that one opinion, and the controlling principles are the same in the Spalding case as in the case under consideration, and the determination of the question before us depends upon the law as interpreted in the Spalding case modified, if it has been modified, by the opinions in subsequent cases.

The opinion in the case of Coleman v. O'Leary's Ex'r et al., 114 Ky. 388, 70 S. W. 1068, 24 Ky. Law Rep. 1248, was written in 1902, and it construed a number of clauses in the will of John D. O'Leary. Clause 12 of the will was declared invalid. It was in this language: ''I give and bequeath to the Rt. Rev. Roman Catholic Bishop (for the time being) of Cork, Ireland, the sum of $3,000, to be applied to any charitable uses, and so as to do most good, in his judgment.'' This clause was declared invalid upon the authority of the opinion in the Spalding case.

Clause 22 of the O'Leary will was in this language:

''I give and bequeath to the Order of the Society of Jesus, known as the 'Jesuit Order,' one hundred

acres of land, at or near my place, Doneraile, in Jefferson and Bullitt counties, for the purpose of education or religion; they to have the privilege of selection on any lands on the west side of the Louisville & Nashville Railroad right of way."

The court gave many augmentative reasons why that provision of the will was invalid. It was declared invalid under the authority of the opinion in the Spalding case. The court took occasion to say:

"Whatever educational or religious purpose the chancellor, or his trustee, or this court, might select, would be open to the objection that it was not the declared intention of the testator, and that it was possibly an object of which he would not have approved. To effectuate a charitable use in this state, it is necessary that the courts should be able to control the trustee, and, if necessary, upon the application of the decedent's heirs at law, revise his action."

Further along in the opinion the court said:

"The donor must select his charity. He may delegate power to select the individual recipients of his bounty, but a gift to charity in general is too vague to be enforced. Spalding v. Industrial School, 107 Ky. 382, 54 S. W. 200, 21 Ky. Law Rep. 1107. A charitable use which is relieved from the operation of that rule must be so definitely expressed that the courts can judicially, and with reasonable certainty, apply the gift to that object."

The case of Gerick's Executor v. Gerick et al., 158 Ky. 478, 165 S. W. 695, construed a provision in the will of Henry Gerick in this language:

"I hereby appoint Henry J. Schoo, Jr., to be executor of this my last will, without bond, and to dispose of all my other possessions according to his judgment for good and charitable purposes."

The executor, acting under the power attempted to be conferred by this provision of the will, selected fifteen religious, educational, and charitable organizations to be the donees of the charity. The court held the provision invalid, holding that a charitable bequest to be valid must be reasonably certain, and that the testator did not

use any language in the will which would enable a court to construe it as stating with reasonable certainty any charitable purpose of beneficiary. The decision was based on the opinion in the Spalding case, as well as the opinion in the O'Leary case. The case of State Bank & Trust Co. v. Patridge, 198 Ky. 403, 248 S. W. 1056, 1957, is one where the validity of a trust created by will for a charitable use was upheld. There was a clause in the will of Lelia E. Patridge in this language:

"All the residue of my estate, both that now in my possession and whatever I may fall heir to, I wish to have placed in the hands of some person or persons who will use it as a trust fund to assist aged unmarried women, preferably teachers, so that their last days may not be made miserable by extreme poverty."

In the opinion the court adhered to the doctrine of many opinions that such a bequest or devise is void unless the paper creating the trust points out with reasonable certainty the purposes of the charity and the beneficiaries thereof as required by the statutes. The court upheld the validity of the provision in the will on the authority of the case of Moore's Heirs v. Moore's Devisees, supra, again holding that when an ascertainable object is designated by the donor in general and collective terms, or when a person is appointed by the donor to select a prescribed portion or kind or number from a designated class the beneficiary has been described with reasonable certainty. The provision of the will under consideration in that case shows that the purposes of the charity were pointed out with certainty, and the class from which the beneficiaries should be selected was named as unmarried women, preferably teachers. As the purposes of the charity were sufficiently designated and a designated class was named as beneficiaries, under the principles of the Moore case the donor was not acting contrary to the statute when he appointed a person to select a number from the class so designated. The court distinguished that case from the Spalding case.

In the case of Russell et al. v. Tyler et al., 224 Ky. 511, 6 S. W. (2d) 707, 712, the court upheld a trust created for a charitable use on the ground that, "The trustee is not authorized to choose the purpose or select the beneficiary, but is only given discretion to determine whether it is properly organized and is worthy."

A bequest for a charitable use was upheld in the case of Greer et al. v. Synod Southern Presbyterian Church in Kentucky, 150 Ky. 155, 150 S. W. 16. The opinion in that case dwells at some length on the requirement as to pointing out with certainty the purposes of the charity, and shows the necessity for the pointing out of the purposes of the charity if such provisions in wills creating a trust for a charitable use are to be upheld.

In the case of Thompson's Executor v. Brown, 116 Ky. 102, 75 S. W. 210, 25 Ky. Law Rep. 371, 62 L. R. A. 398, 105 Am. St. Rep. 194, the purposes of the charity were stated, in that directions were given by the testatrix to distribute her estate among the poor in the discretion of her executor. The poor having been named as a class, the executor was vested with the power to select a number from that class. In Jenkins v. Berry, 119 Ky. 350, 83 S. W. 594, 26 Ky. Law Rep. 1141, the purposes of the charity were stated in the direction that the fund should be used for the erection and maintenance of a hospital. In Green's Adm'r v. Fidelity Trust Co., 134 Ky. 311, 120 S. W. 283, 20 Ann. Cas. 861, directions were given for the use of the fund created by the provisions of a will in the establishment and maintenance of an orphans' asylum. In Sprowl v. Blankenbaker (Ky.) 127 S. W. 496, the gift was to named charitable institutions to be held for the Sunday school cause. In Kasey v. Fidelity Trust Co., 131 Ky. 609, 115 S. W. 739, the gift was to a specific trust company and the purpose was as an endowment for specified Bible societies to distribute Bibles to the poor. In the case of Miller v. Tatum, 181 Ky. 490, 205 S. W. 557, the bequest was to a certain church to aid the church in its local work. In the case of Kratz v. Slaughter's Executor, 185 Ky. 256, 214 S. W. 878, the purposes of the charity were the activities of the Southern Presbyterian Church, and the trustees were empowered to select the particular activity for which the fund should be used. In Bailey v. Waddy, 195 Ky. 415, 243 S. W. 21, the purpose of the charity was to establish a professorship to teach students certain designated religious doctrines.

In all of the cases just cited the purposes of the charity were set out with reasonable certainty. The fund to be created was to be used for the accomplishment of a general purpose. This court upheld the provisions of the instrument establishing a charitable use in each instance.

In the will of Mrs. Watson she referred to charitable institutions in the cities of Lexington and Maysville without attempting to define the purposes of the charity, or to point out in any way her desires as to its use other than in general language that her executor and trustee should select from among the number of charitable institutions those which should be the object of her bounty. There are churches in these cities of different denominations, and probably of different religions; there are hospitals; homes for the indigent; homes for orphans; homes for the aged; humane societies; and many others which might be mentioned. She did not state the purposes of the charity so that a court of equity could determine what she had in mind. She left it to her executor and trustee to determine the purposes of the charity by the selection of one or more charitable institutions, and she did not confine the selection to any charitable institution doing a particular charitable work. She did not even state the general purposes of the charity. The provision creating a charitable use cannot be read in the light of the many opinions dealing with the question without reaching the conclusion that the purposes of the charity are not pointed out with reasonable certainty. It is not easy to distinguish all of the cases, the one from another, where this court has sought to favor such bequests as is the general policy of the law. Where there has been named a beneficiary, although the designation may have been very general, the court has usually found a way to uphold such provisions in so far as the designation of the beneficiary was concerned. The court has likewise sought diligently in all cases to find some expression in such instruments that could be so construed as to enable the court to find a reason for holding that the purposes of the charity had been pointed out with reasonable certainty. But in this case the purposes of the charity were not defined, or even referred to. The general nature of the purposes to be served may be shown by the designation of certain charitable institutions, but charitable institutions are almost innumerable, and the naming of charitable institutions as a class without any suggestion of the nature of the charitable work done by such institutions is not sufficient to point out with certainty the purposes of the charity.

It follows that the court must hold the provision of the will under discussion invalid.

The interest of the appellants as remaindermen is such as to enable them to maintain the action at this time.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.