**BANK OF MAYSVILLE, Executor of the Estate of Clara C. Martin, Deceased et al., Appellants,**

v.

**James A. CALVERT et al., Appellees.**

**BANK OF MAYSVILLE, Executor of the Estate of Clara C. Martin, Deceased and the Unknown Religious Charitable Devisees, Appellants,**

v.

**James A. CALVERT et al., Appellees.**

Court of Appeals of Kentucky.

May 12, 1972.

Eugene C. Royse, Royse, Zweigart & Kirk, Bernard Coughlin Hargett, Maysville, for appellants.

John H. Clarke, Jr., James L. Clarke, Clarke & Clarke, Maysville, for appellees.

VANCE, Commissioner.

The consolidated appeals involve the validity of the following portion of the will of Clara C. Martin, deceased:

"6. I direct the remaining net proceeds of my estate to be divided among such charitable and religious organizations as the executor of my estate may

deem deserving, within its sole discretion."

The question is whether the language of the will sufficiently points out with reasonable certainty the purposes of the charity and the beneficiaries thereof to comply with KRS 381.260 which provides as follows:

"Every grant, conveyance, legacy, bequest, devise, gift, appointment, assignment and transfer of property, whenever made and in whatever form, shall be valid (a) if made to any corporation, association, trust, foundation, or similar organization or entity, created or formed for and devoted solely to charitable, religious, scientific, literary, educational, humane, benevolent or like purposes or, (b) except as otherwise provided by statute, if it is made for any charitable or humane purpose and if it points out with reasonable certainty the purposes of the charity and the beneficiaries thereof."

Some review of the historical development of the law of charitable uses is necessary to fully understand the issues presented by this case. Under English law charitable devises were upheld by the courts as a part of their general equity jurisdiction prior to 1601. In that year the Statute of Charitable Uses, (43 Eliz. c. 4) was enacted. This statute enumerated a number of specific charitable uses. Both before and after the enactment of the statute the English Chancellors, under the doctrine of cy pres, were authorized to supply a particular charitable use to which the testator's funds would be applied in cases in which the testator devised property for a charitable use but failed to specify the nature of the charity or object thereof sufficiently to require the funds to be devoted to a particular use. Bogert, Trusts and Trustees, Second Edition, Section 432.

The words "cy pres" are of French origin meaning, "as near," or "as near as possible." Roughly speaking the doctrine of cy pres is that equity will, when a charitable use becomes impossible or impracticable of fulfillment, substitute another charitable object which is believed to approach the original purpose as closely as possible. Bogert, Trusts and Trustees, Second Edition, Section 431.

Early in the history of this Commonwealth this court rejected the doctrine of cy pres, at least to the extent of supplying the objects or purposes for a charitable devise when none were designated by the testator.[1] Moore's Heirs v. Moore's Devisees, 34 Ky.Reports (4 Dana) 354 (1836). Therein we said:

" * * *. We are satisfied, that the *cy pres* doctrine of England is not, or should not be, a judicial doctrine, except in one kind of case; and that is where there is an available charity to an identified or ascertainable object, and a particular mode, inadequate, illegal, or inappropriate, or which happens to fail, has been prescribed. In such a case, a court of equity may substitute or sanction any other mode that may be lawful and suitable, and will effectuate the declared intention of the donor, and not arbitrarily and in the dark, presuming on his motives or wishes, declare an object for him. A court may act judicially as long as it effectuates the lawful intention of the donor. But it does not act judicially when it applies his bounty to a specific object of charity, selected by itself merely because he had dedicated it to charity generally, or to a specified purpose which cannot be effectuated; for the court cannot know or decide; that he would have been willing that it should be applied to the object to which the judge, in the plenitude of his unregulated discretion and peculiar benevolence, has seen fit to decree its appropriation—whereby he, and not the donor, in effect and at last, creates the charity."

Although *Moore* pointed out the need for specificity in designating the object or pur-

1. The doctrine of cy pres in Kentucky is fully discussed in 35 Ky.Law Journal 95.

pose of the charity, it recognized that beneficiaries might be designated collectively by some characteristic trait by which they might be identified. The charitable trust therein for "the education of poor orphans of Harrison County not able to educate themselves" with the particular beneficiaries to be selected by the county court was *upheld.*

From this beginning the degree of precision with which the objects of the charity and the beneficiaries thereof must be identified in a valid charitable devise has been the subject of frequent litigation. Twice this court has seen fit to review in detail all prior litigation upon the subject. Spalding v. St. Joseph's Industrial School for Boys, 107 Ky. 382, 54 S.W. 200 (1899) and Gooding v. Watson's Trustee, 235 Ky. 562, 31 S.W.2d 919 (1930).

In 1850 the General Assembly of Kentucky enacted the following statute:

"All grants, conveyances, devises, gifts, appointments, and assignments, heretofore made, or which shall be hereafter made, in due form of law, of any lands, tenements, rents, annuities, profits, hereditaments, goods, chattels, money, stocks, or choses in action, for the relief or benefit of aged or impotent and poor people, sick and maimed soldiers and mariners, schools of learning, seminaries, colleges, universities, navigation, bridges, ports, havens, causeways, public highways, churches, houses of correction, hospitals, asylums, idiots, lunatics, deaf and dumb persons, the blind, or in aid of young tradesmen, orphans, or for the redemption of prisoners or captives, setting out of soldiers, or for any other charitable or humane purpose, shall be valid, * * *."

In 1893 the General Assembly added to the statute a provision that such grants, devises and gifts would be valid if the purpose of the charity and the beneficiaries thereof were pointed out with reasonable certainty. Chapter 200, Kentucky Acts of the General Assembly (1893).

Following the 1893 Act of the General Assembly this court reviewed all its prior decisions concerning charitable devises in Spalding v. St. Joseph's Industrial School for Boys, supra. Spalding involved a devise of an estate for *charitable objects* to be selected by the executor of the will. This will was invalidated upon the ground that the will did not designate the objects or purposes of the testator with reasonable certainty. This court said:

"* * * . We cannot tell whether the object selected by the executor would be approved by the testator, for no guide is left us by him from which to ascertain his desire. After a careful consideration of this will, we are constrained to the conclusion that it amounts to nothing more than a power of attorney to make a will for the testator, and that this cannot be done in Kentucky. It is far more vague and indefinite than the will in Attorney General v. Wallace's Devisees, supra, in which case this court went to the furthest limit to which it is inclined to go, even to sustain charitable uses,— those favorites of courts of equity. These, without elaboration, are the conclusions we have reached."

It was noted in *Spalding* that until that time every case which sustained a charitable devise did so upon the ground that an ascertainable object or purpose of the devise was apparent even though the particular beneficiary of a devise was sometimes left to the selection of a trustee from a class of beneficiaries described in the instrument.

The subsequent review of charitable devises in Gooding v. Watson's Trustee, supra, was of similar import. There the devise was to "such charitable organizations (excluding educational institutions) located in Lexington, Kentucky and Mays-

ville, Kentucky, or both or either," as the executor may select.

In invalidating the devise, this court said:

"In the will of Mrs. Watson she referred to charitable institutions in the cities of Lexington and Maysville without attempting to define the purposes of the charity, or to point out in any way her desires as to its use other than in general language that her executor and trustee should select from among the number of charitable institutions those which should be the object of her bounty. There are churches in these cities of different denominations, and probably of different religions; there are hospitals; homes for the indigent; homes for orphans; homes for the aged; humane societies; and many others which might be mentioned. She did not state the purposes of the charity so that a court of equity could determine what she had in mind. She left it to her executor and trustee to determine the purposes of the charity by the selection of one or more charitable institutions, and she did not confine the selection to any charitable institution doing a particular charitable work. She did not even state the general purposes of the charity. The provision creating a charitable use cannot be read in the light of the many opinions dealing with the question without reaching the conclusion that the purposes of the charity are not pointed out with reasonable certainty. It is not easy to distinguish all of the cases, the one from another, where this court has sought to favor such bequests as is the general policy of the law. Where there has been named a beneficiary, although the designation may have been very general, the court has usually found a way to uphold such provisions in so far as the designation of the beneficiary was concerned. The court has likewise sought diligently in all cases to find some expression in such instruments that could be so construed as to enable the court to find a reason for holding that the purposes of the charity had been pointed out with reasonable certainty. But in this case the purposes of the charity were not defined, or even referred to. The general nature of the purposes to be served may be shown by the designation of certain charitable institutions, but charitable institutions are almost innumerable, and the naming of charitable institutions as a class without any suggestion of the nature of the charitable work done by such institutions is not sufficient to point out with certainty the purposes of the charity."

■ KRS 381.260(a) validates devises to any corporation, association, trust, foundation or similar organization created or formed for and devoted to charitable, religious, scientific, literary, educational, humane, benevolent or like purposes. No statement of purpose or object is required in a devise to such an organization when specifically named because the designation of the particular organization or entity which has been organized for and devoted to a charitable use carries with it the implications that the objects of the testator and the objects of the organization selected are the same.

KRS 381.260(b) validates devises for charitable purposes, even though not made to any specific organization or entity, if the devise points out with reasonable certainty the purposes of the charity and the beneficiaries thereof.

This case is governed by KRS 381.260 (b) because no specific charitable institution or organization was designated in the devise.

We are cited by appellants to decisions of this court which have upheld devises of a very broad nature. In some the purpose, although broad, was clearly stated, such as "educating some poor orphans in this county" in Moore's Heirs v. Moore's Devisees,

supra, and "dissemination of the gospel at home and abroad" in Attorney General v. Wallace's Devisees, 46 Ky. (7 B. Mon) 611 (1847), decided prior to the 1893 amendment to the statute.

In other cases the purpose was indicated by the designation of the beneficiaries as in Thompson's Ex'r v. Brown, 116 Ky. 102, 75 S.W. 210 (1903), in which a devise for distribution to the poor showed a purpose and object to aid the poor.

■ Charitable devises are favorites of the law and the court has strained to find whenever possible a stated purpose sufficiently precise to validate the devise. In Druker v. Levy, Ky., 262 S.W.2d 681 (1953), a devise to "Jewish charities and organizations or institutions" was interpreted to mean "Jewish charitable organizations or Jewish charitable institutions" and the devise was upheld upon the ground that a devise to Jewish charities implied a purpose to give aid to the people of the Jewish faith and culture. The court, as presently constituted, has serious doubt as to the soundness of the Druker opinion but in any event, the Druker will come closer to specifying with reasonable certainty an object to be accomplished by the devise than the will in this case.

■ Here the devise was to "charitable and religious organizations." Even if this were interpreted to mean "charitable religious organizations" no object or purpose of the devise is stated with reasonable certainty.

There are religious organizations of conflicting dogmas and beliefs all over the world. Doubtless most of them maintain some charitable function. Nothing in this will designates what charitable function or object the testator desired to aid. If the executor should decide to distribute the funds to a Buddhist or a Moslem charity, who could say whether it was acting to promote a purpose or object which the testator had in mind or whether the action would be repugnant to testator's wishes. If the devise is upheld the executor can devote the funds to any charity operated by any religious organization anywhere without regard to the ends accomplished by such charity.

■ The purposes of a charity are not sufficiently designated where they are stated so generally as to allow the funds to be devoted to uses which might be completely repugnant to the testator's wishes.

Appellants argue that past decisions of this court reflect a minority view in the United States and that social trends dictate that we should align ourselves with the rule stated in Scott on Trusts, Section 396 as follows:

"A testator may devise or bequeath property in trust for charitable purposes without designating the particular purposes to which he wishes the property to be applied. He may leave the property to trustees for such charitable purposes as they may select. Such a disposition is valid according to the great weight of authority. If the trustee is ready and willing to make the selection, there is no reason why he should not be permitted to do so. * * *."

The matter involved is a matter of policy upon which our legislature has spoken. The requirement in our statute that the purpose of the charity must be shown with *reasonable certainty* is plain. It is the function of this court to interpret legislation, not to repeal it by judicial decision.

Other states have enacted legislation which expressly provides that a charitable trust shall not be defeated by reason of indefiniteness of the purpose of the trust. Virginia Code of 1950, Section 5531. If a change in policy in Kentucky is desirable it must come about in conformity with

rather than in derogation of our statutory law.

The judgment appealed from directed the executor to tender a final settlement of the estate to the court and to pay into court all funds remaining after disbursements for specific bequests and the payment of expenses in order that the court might make distribution of the remainder in accord with the statute of descent and distribution.

Appellants contend the trial judge abused his discretion in so removing the executor. With this contention we agree.

This was an action for the interpretation of a clause in the will. It was not an action to settle the estate. No reason is shown why the executor cannot or will not promptly make the distribution to the heirs-at-law of Clara C. Martin.

It is the generally recognized rule that it is the duty of the nominated executor acting in good faith, to maintain the will in all its provisions and to resist efforts to set it aside. Douglas v. Douglas, 243 Ky. 321, 48 S.W.2d 11 (1932).

In Trevathan's Ex'r v. Dees' Ex'rs, 221 Ky. 396, 298 S.W. 975 (1927), we held that an executor may not fight the heirs-at-law at the expense of the estate for his own private gain. That is not the case here.

We do not consider this appeal frivolous or that it was taken in bad faith. The executor should proceed to distribute the funds remaining in its hands and make its settlement with the county court and it is entitled to the allowance of a reasonable fee for its services as executor.

The judgment is affirmed in part and reversed in part with directions that a new judgment be entered in conformity with this opinion.

All concur.